## Case No. 18,169.

### YOUNG v. The ORPHEUS.

### LEWIS v. SAME.

[2 Cliff. 29.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1861.[2]

ADMIRALTY JURISDICTION — CONTRACT FOR SHIP MATERIALS.

A contract to furnish materials for the construction of a vessel, even where the same is built upon the shores of tide-waters, and designed for use upon the navigable waters of the sea, is not within the admiralty jurisdiction of the United States courts.

[Cited in Edwards v. Elliott, 21 Wall. (88 U. S.) 556; Rodd v. Heartt, Id. 592; Doolittle v. Knobeloch, 39 Fed. 40, 41; The Manhattan, 46 Fed. 799.]

[Cited in Globe Iron-Works Co. v. The John B. Ketcham, 2d (Mich.) 59 N. W. 249; McDonald v. The Nimbus, 137 Mass. 363; The Victorian (Or.) 32 Pac. 1042; Wilson v. Lawrence, 82 N. Y. 411.]

[Appeals from the district court of the United States for the district of Massachusetts.]

Both suits were in rem to enforce on the ship Orpheus a lien arising under the law of the state, for materials furnished at the request of the builders, and in the construction of the vessel. On the 6th of August, 1855, Mitchell and Rice contracted with the claimants, in writing, to build the ship, or the hull, including all iron-work and joiner-work, and also to furnish masts, spars, and blocks, including iron-work on the same and to the rigging, but not including rigging or copper sheathing. She was to be of certain specified dimensions, and was to be launched and delivered to the claimants by December 15 of the same year. The price for the vessel was $45,000 equal to cash, in thirty days after she was launched and delivered to them in Boston. Of that sum $30,000 was to be advanced, "as the ship progressed, and was to be paid out for materials and labor used in her construction." All of the materials constituting the claims of the respective libellants were furnished by them before the launch of the ship to Mitchell and Rice, the builders, and for the purpose of being used in building the same. Sixteen thousand six hundred feet of the lumber furnished by one of the libellants, and one thousand feet furnished by the other, were not used in the building of the ship, but,

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirming Case No. 8,330.]

remaining in the yard after she was launched, were subsequently sold by the assignee in insolvency of the builders. The ship was built at Chelsea, was launched in February, and in March following sailed on a voyage to San Francisco. The libels alleged that the materials and lumber were furnished on the credit of the ship; that by the laws of Massachusetts and of the United States the respective libellants had a lien upon the ship for the payment of the amount due, which in the first-named suit was alleged to be $2,478.84, and in the second $462.83. It was denied, in the answer, that the statements of the libels were true accounts of the claims for materials furnished in the constructing and launching of the ship. Certain other defences touching the merits of the controversy were also set up by the claimants, but the view of the case taken by the court renders it unnecessary to make mention of them. The answers further set forth that at the time the vessel was seized by the marshal she was in the custody of the sheriff of the county, by virtue of an attachment made by him under process issuing from the state court, and it was denied that the subject-matter of the suits was one within the admiralty jurisdiction. The district court sustained the objection to the jurisdiction arising from the alleged prior custody of the sheriff, and dismissed the libels. [Case No. 8,330.]

E. F. Hodges, for libellant.

Was there ever a lien upon the ship in favor of the libellant? He furnished lumber, materials, &c., "to construct the ship," "by virtue of a contract" with a "person employed to construct her," and "money is due" therefor. By the language of the state statute (chapter 231, Acts 1855), the lien existed. Hawes et al. had no lien on the ship. The statute lien is dissolved, unless a certificate, &c., is filed in the town clerk's office, &c.. as per section 2, c. 231, Acts 1855; and they filed no certificate. Hawes et al.'s attachment gives no notice of their lien; for all that appears, it is an attachment in an action of contract, which would give way before a lien process. Certain Logs of Mahogany [Case No. 2,559]; Travis v. Bishop, 13 Metc. (Mass.) 304; Denney v. Lincoln, Id. 200; Buttrick v. Holden, Id. 355. The sheriff, by abandoning the ship, and having no keeper, lost his hold upon the property; it was then no longer in the custody of the law. The process of the state court was no longer operative, and another jurisdiction could be exercised. The attachment in the Hawes Case was dissolved by a bond, and the sheriff abandoned the ship, leaving her in the possession of the marshal. There was clearly, then, no jurisdiction on the part of the state court. The bond is, "to pay the judgment," not "to return the ship." The federal courts then took and had jurisdiction, by taking and holding possession of the rem. It must be remembered that the state court rendered judgment against Hawes

et al. The Oliver Jordan [Case No. 10,503]. The respondents have stipulated in this case, and in so doing waived all objection to the jurisdiction. The case is governed by the decision and reasoning of the court in The Robert Fulton [Id. 11,890]; The Young Mechanic [Id. 18,180].

The federal courts have jurisdiction to enforce such a lien. Prior to the decision in The Jefferson v. Beers, 20 How. [61 U. S.] 393, no doubt existed that the federal courts had jurisdiction over cases of admiralty liens, however those liens may have arisen, or whatever authority may have created them. The decision was followed by a repeal of the twelfth rule of admiralty practice, under which the country had for many years acted, and by the following cases: Roach v. Chapman, 22 How. [63 U. S.] 129; The Coernine [Case No. 2,944]; Morewood v. Enequist, 23 How. [64 U. S.] 494. These cases announce the following principles: That contracts for building ships are not necessarily maritime contracts, and therefore are not necessarily within the admiralty jurisdiction of this court; that the admiralty law will not raise or create a lien in favor of the man who has furnished materials for building a ship in the absence of any local law. These cases do not decide that when a lien has been fairly created upon a ship, the federal courts have not jurisdiction to enforce such lien after the course of. courts of admiralty. Nor can any such decision be found here or in any country, where admiralty law has authority. Prior to the decision of The Jefferson v. Beers, 20 How. [61 U. S.] 393, such liens had been enforced by the federal courts in many cases, and in every case where the question occurred the jurisdiction was recognized as undisputed. Since the abolition of the twelfth rule, and the decision in The Jefferson v. Beers, the courts have sustained libels (commenced before the abolition of the rule) to enforce liens created by the state laws. Tupper v. The St. Lawrence [Case No. 14,240]; The Richard Busteed [Id. 11,764]. The federal courts have jurisdiction to enforce liens for the construction or repairs of ships, designed for navigating the high seas, however those liens may have been created. By the constitution, art. 3, § 2, the judicial power of the United States extends to cases of admiralty and maritime jurisdiction. The act of 1789, c. 20, § 9 [1 Stat. 76], confers upon the district court "exclusive original cognizance of all original causes of admiralty and maritime jurisdiction." The act of 1845 [5 Stat. 726] extends the admiralty jurisdiction of the district courts to vessels of twenty tons' burden, at the time employed in commerce between ports of different states, upon the lakes and navigable waters between the same. A contract to furnish materials for the construction of a ship, being built upon the shores of tide-water, and designed for use upon the navigable waters of the sea, is a maritime contract, and within the admiralty

and maritime jurisdiction, as these words are used in the constitution and acts of congress. The words "admiralty and maritime jurisdiction," as employed by the state and judicial authorities of this country, have an import much wider than they had in England, at the time of the separation of the colonies from the mother country. They embrace nearly or quite as much as they did under the civil law. Read v. Hull of a New Brig [Case No. 11,609]; Purinton v. Hull of a New Ship [Id. 11,472]; The Sandwich [Id. 13,409]; The Young Mechanic [Id. 18,180]; Mar. Ord. tit. 2, art. 1; Davis v. New Brig [Case No. 3,643]. A contract to build a ship was always maritime ex vi termini, both in England and in those countries of Continental Europe governed by the civil law. The Jerusalem [Case No. 7,-294]; Ross v. Walker, 2 Wils. 265. Some decisions have been made in this country, in which such contracts have been held not to be maritime; but it is believed they were either cases in rem, where no lien existed, and of course no jurisdiction in rem could be maintained, or they were contracts for the construction of vessels not designed for use upon waters over which the admiralty jurisdiction extends. De Lovio v. Boit [Case No. 3,776]; The Jerusalem [supra]; Parmlee v. The Charles Mears [Case No. 10,766]; Roach v. Chapman, 22 How. [63 U. S.] 129; Davis v. New Brig [Case No. 3,643]; Read v. Hull of a New Brig [supra]. The fact that a maritime lien exists upon a ship within the ebb and flow of the tide, gives this court jurisdiction, without reference to the authority under which the lien is created. It is admitted that a state legislature cannot give jurisdiction to a federal court. But it can create a right in a thing over which the federal court has, by other and legitimate authority, jurisdiction. The fact that the law creates a maritime lien upon the ship, out of the contract between the material man and the builder (the ship being for use upon waters within the admiralty jurisdiction), makes that contract itself maritime. The lien created by the statute of Massachusetts is a maritime lien. A maritime lien is a jus in re, as distinguished from a jus ad rem, and, as such, may be enforced in a court of admiralty. The Young Mechanic [supra].

E. H. Derby, for claimants.

The contract declared on is not a maritime contract, and the court will not take jurisdiction. It is a contract to be performed on land. It is for the plank furnished to a ship before launching, before she touched salt water. See Ferry Co. v. Beers, 20 How. [61 U. S.] 399. The statutes of a state cannot confer jurisdiction on the United States courts; they derive their jurisdiction from the constitution and laws of the United States, and in admiralty are confined to purely maritime contracts. Maguire v. Card, 21 How. [62 U. S.] 249; Allen v. Newberry, Id. 246. Jurisdiction in admiralty cases is restricted to the power possessed by congress to regulate commerce with foreign states, which does not extend to those internal concerns that are completely within a particular state, when they do not affect other states. Gibbons v. Ogden, 9 Wheat. [22 U. S.] 194. In the case of Allen v. Newberry, a steamer bound for Illinois to other states took goods from port to port in Wisconsin. Held, that a suit in admiralty would not lie. See Roach v. Chapman, 22 How. [63 U. S.] 129. Any former dicta or decisions which seem to favor a contrary doctrine were overruled by this court in the case of Ferry Co. v. Beers, 20 How. [61 U. S.] 400. See, also, Peyroux v. Howard, 7 Pet. [32 U. S.] 343, and The Orleans v. Phœbus, 11 Pet. [36 U. S.] 183. The duty of the courts of the United States is to take notice of the want of jurisdiction, even where it has been waived by the parties, and without waiting for an objection from either side, when the proceedings in the district court show a want of jurisdiction. Cutler v. Rae, 7 How. [48 U. S.] 731; The Bee [Case No. 1,219]. The twelfth rule last adopted does not protect the claim of the libellant. It protects only claims of a purely maritime character, such as for repairs of ships in domestic ports, to which a lien attaches by a state law. The change of rule twelfth, which omits the former license to proceed in rem, in case of domestic ships, for repairs and supplies, as under the old rule, but puts the rule in force from May, 1859, preserves the suit in rem in contracts purely maritime, as for repairs, but does not apply to contracts to be performed on land, as for building a ship. The case of Roach v. Chapman, 22 How. [63 U. S.] 129, is directly in point. A contract to build a ship is not a maritime contract. See Ferry Co. v. Beers, 20 How. [61 U. S.] 399. In Roach v. Chapman, the court say: "A contract for building a ship is clearly not a maritime contract." In the case of Morewood v. Enequist, 23 How. [64 U. S.] 494, the court say: "The court decided in that case (Ferry Co. v. Beers) that a contract to build a ship is not a maritime contract." The United States courts have no jurisdiction over this case, under that provision of the constitution which gives congress power to regulate commerce with foreign nations and between the several states of the Union. The lien given rests upon an artificial structure, and depends upon a local statute, which must be strictly followed and construed. Greene v. Ely, 2 G. Greene (Iowa) 508; Lynch v. Cronan, 6 Gray, 532. The lien rests on two statutes of Massachusetts. Chapter 117, Rev. St., combined with chapter 231, Acts 1855. The prerequisites of these statutes have not been complied with. Acts 1855, c. 231, § 2. requires the claimant, within four days from the time that the vessel leaves the port where she was when the materials were delivered, to file a certificate with the town clerk. The seizure made by the marshal was invalid, and gives no jurisdiction to this court. Nor is it helped by the stipulation. A me-

chanic who proceeds under the lien law of New York against owners, for work done under contractors, cannot recover if nothing be due to the latter on their contract. Pike v. Irwin, 1 Sandf. (N. Y.) 14.

CLIFFORD, Circuit Justice. It is insisted by the libellants that on this state of facts the federal courts have jurisdiction to enforce the lien under the state law. They in effect admit that to maintain that view of the case it is necessary to show that a contract to furnish materials for the construction of a ship is a maritime contract, and they accordingly submit the affirmative of that proposition, and insist that all such contracts are maritime, especially where the ship is to be built upon the shores of tide-waters, and is designed for use upon the navigable waters of the sea. Maritime contracts are such as relate to commerce and navigation, and unless a contract for the building of a ship is to be regarded as a maritime contract, it will hardly be contended that a contract to furnish the materials for the construction of the same can fall within that designation, as the latter is more strictly a contract made on land and to be performed on land than the former, and is certainly one stage further removed from any immediate and direct relation to commerce and navigation.

On the other hand, if it be admitted that a contract to build a ship is a maritime contract, it is difficult to say that a contract to furnish the materials for the construction of the same is not also of the same character, although its breach and even its performance may involve judicial inquiries into the business transactions of men, as well in the forests and mines, as in the manufactories and workshops of the country.

Consequently, wherever the question involved in the record has been considered, the decision has uniformly turned upon the solution of the inquiry, whether a contract for building a ship is or is not a maritime contract. The parties in this controversy have conducted the investigation in the same way, and very properly, because it is clear that if a contract for building a ship is not a maritime contract, then this court has no jurisdiction of the matters involved in the cases under consideration. Beyond question the supreme court is the ultimate tribunal, under the constitution of the United States, to construe both the constitutional grant of judicial power in cases of admiralty and maritime jurisdiction, and the acts of congress regulating its exercise. Decisions of the supreme court, therefore, are final and conclusive upon the subject. Such a decision is an authority in this court, and of course will be followed even in cases where the present circuit judge is not able to yield his assent to the conclusion. Allowing the rule to be so, it is insisted by the claimants that the question involved in the controver-

sy has been several times conclusively decided in that court, and they refer to the cases upon which they rely to support that proposition. But the libellants deny the proposition, and insist that no one of the cases referred to fully decides the point under consideration. Some care must be observed, under the circumstances, in examining those cases, and the more so, as two of the district courts, in respect to one of them, have come to opposite conclusions as to the proper construction to be given to the opinion of the court. Reference is made, in the first place, to the case of The Jefferson, 20 How. [61 U. S.] 393, in which the opinion of the court was given by Mr. Justice Catron. Recurring to the statement of the case, it will be seen that it was a libel filed by the assignees of the builders against a new steam ferry-boat, for a balance due the builders on account of work done and materials furnished in constructing the hull of the vessel. The builders contracted to build three ferry-boats at Keyport, in the state of New Jersey, but they built this one only, and they claimed a lien for the unpaid balance of the price.

Decree was entered in their favor in the court below, and the claimants appealed to the supreme court. When the cause came up for argument, the first point made for the claimants was, that a contract to build and complete a ship is not one within the admiralty jurisdiction of the federal courts, though it be intended to employ her in navigating the ocean, and even though the employer be a citizen or inhabitant of some other place or country than that in which the work is to be done. Direct issue was taken upon that proposition by the libellants, and the court say: "The only matter in controversy is whether the district courts have jurisdiction in admiralty to enforce liens for labor and materials furnished in constructing vessels to be employed in the navigation of waters to which the admiralty jurisdiction extends." Notice was taken in the argument of the fact that the state law in that case gave no lien in favor of the builder, but the main point urged for the claimants was that the building of a ship was purely a local matter in no way directly connected with maritime commerce.

Responding to that argument, the court say: "The admiralty jurisdiction, in cases of contract, depends primarily upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching rights and duties appertaining to commerce and navigation." Applying that rule to the case then under consideration, the court say: "So far from the contract being purely maritime, and touching rights and duties appertaining to navigation (on the ocean or elsewhere), it was a contract made on land to be performed on land." Effort is certainly required to misunderstand that language; but the court go fur-

ther, and say, the wages of the shipwrights had no reference to a voyage to be performed. They had no interest or concern whatever in the vessel after she was delivered to the party for whom she was built, and they were bound to rely on their contract.

Looking at the whole case, I am of the opinion that the supreme court in that case decided, and intended to decide, that a contract for the building of a ship is not a maritime contract. Judge Wilson took the same view of the question in the case of The Revenue Cutter [Case No. 11,713]; but Judge Sprague, in the case of The Richard Busteed [Id. 11,764], held that a contract for the building of a sea-going vessel was maritime, and came to the conclusion that the contrary opinion, expressed in the Case of The Jefferson, might be regarded as the reasoning or dictum of the judge who delivered the opinion. Since the last-named case was decided, the same question has more than once come before the supreme court, and on every occasion the decision has been that such contracts are not maritime. Such was the view of the court in the case of Roach v. Chapman, 22 How. [63 U. S.] 129, where the opinion of the court was given by Mr. Justice Grier. Proceedings had been instituted in the district court for the Eastern district of Louisiana, in that case against the steamer Capitol, to enforce a lien for a part of the price of the engine and boilers, which had been furnished at Louisville, in the state of Kentucky, where she was built. Libellants claimed a lien under the general admiralty law and under the law of the state. Plea was filed to the jurisdiction of the court, and the court say, a contract for building a ship or supplying engines, timber, or other material for her construction, is clearly not a maritime contract, and that any former dicta or decisions which seemed to favor a contrary doctrine were overruled by this court in the case of The Jefferson, 20 How. [61 U. S.] 400. During the same session of the court, the same question was again presented in the case of Morewood v. Enequist, 23 How. [64 U. S.] 494. and was again decided in the same way. On that occasion the court, after referring to the Case of The Jefferson, go on to say that the court decided in that case that a contract to build a ship is not a maritime contract; and though in countries governed by the civil law, courts of admiralty may have taken jurisdiction of such contracts, yet that in this country they are purely local, and governed by state laws, and should be enforced by the state tribunals. Regarding these decisions as authority in this court, it is not possible to sustain the views of the libellants in these cases.

Contracts for repairs and supplies are maritime contracts, and it is for that reason that libels for such claims, if furnished to a foreign ship or for a ship in a foreign port, may be filed against the ship and freight in rem. or against the master or owner in personam. Libels in rem in such cases are based upon a maritime lien, which arises as an implication of law. Such implication, however, does not arise in cases of domestic ships, but under the old admiralty rule the like proceeding in rem was allowed in such cases where a lien was given by the local law. Suits in personam may still be prosecuted in such cases under the new admiralty rule, but not in rem, as under the previous rule. Pending cases or such as were brought before the 1st of May, 1854, when the new rule went into operation, are unaffected by the repeal of the old rule. The St. Lawrence, 1 Black. [66 U. S.] 522. Explanations touching the repeal of that rule and the effect of that repeal are so fully given in the case last referred to, that it seems unnecessary to say more upon the subject, especially as neither the old nor new rule has any application to the case under consideration.

It was suggested at the argument that the objection to the jurisdiction had been waived, but it is the settled doctrine of the federal courts that consent cannot give jurisdiction, nor can the objection be waived. Cutler v. Rae, 7 How. [48 U. S.] 731. Having come to the conclusion that the objection to the jurisdiction of the court must prevail, it is unnecessary to examine the other question. The respective decrees of the district court dismissing the libels are affirmed, but without costs.