(No. 13731.—Judgment affirmed.)

THE CENTRALIA COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ERNEST SUN-DERMEYER, Defendant in Error.)

*Opinion filed April 21, 1921.*

WORKMEN'S COMPENSATION—*when compensation for permanent injury to miner may be based on average wage of other miners in same class.* Under paragraph (*f*) of section 10 of the Compensation act, in arriving at compensation for an injury to a miner which results in permanent total incapacity for work it is proper to base the award upon the average wage of adult miners employed in the same class or grade of employment although the injured miner actually earned less, not because of lack of industry or ability, but because he was placed by his employer in a particular place in the mine where conditions were such that he was unable to earn as much as the other miners.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. THOMAS E. FORD, Judge, presiding.

297—33

· FRANK F. NOLEMAN, JUNE C. SMITH, and ANDREW J. DALLSTREAM, for plaintiff in error.

A. W. KERR, and FRED H. KRUGER, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendant in error, Ernest Sundermeyer, received an injury in the mine of plaintiff in error in December, 1918, rendering him permanently wholly incapacitated for work. The Industrial Commission entered an award in the sum of $12 per week for a period of 291 weeks under paragraph (*f*) of section 8 of the Workmen's Compensation act on the ground that the employee had sustained injuries causing complete disability, rendering him wholly and permanently incapable of working, and also awarded, on the expiration of the 291 weeks, a pension during life, amounting to $280 annually, payable in monthly installments. It found that the basis of this award should be an annual earning of $1248, with an average weekly wage during the year of $24.

The record shows that the actual earnings of the defendant in error during the year next preceding the accident were $741.39, and that his average weekly earnings during that year were $14.25. Under paragraph (*f*) of section 8 of the act the employee was entitled to compensation equal to fifty per cent of his earnings, not less than $6 nor more than $12 per week, commencing on the day after the injury and continuing until the amount paid equals the amount which would have been payable as a death benefit under paragraph (*a*) of section 7 if the employee had died as a result of the injury. Section 8 also provides that after such payments have been completed the employee shall be given an annual pension during life equal to eight per cent of the amount which would have been

payable as a death benefit had the employee died. The effect of basing the award upon an annual earning of $1248 instead of the actual earning of $741.39 is, that instead of requiring 491 weeks for the payment of a sum equal to the amount payable in case the employee had died from the injury it will require but 291⅔ weeks in which to complete said payments, thereby advancing the commencement of his annual pension by 200 weeks. There is no dispute concerning any other phase of this case, plaintiff in error contending only that the rate of compensation was in excess of that allowed by the statute.

It appears from the undisputed evidence that Sundermeyer had been assigned to the work of driving a room where the coal lay beneath a roof of slate three feet in thickness. By reason of the thickness of the slate large quantities of it would fall when a shot was fired, sometimes requiring all day to clean up the slate. The evidence shows that when Sundermeyer cleaned it up he was paid at the rate at which company-men were paid, but by reason of the large amount of slate falling each day and the thin vein of coal in that room he was unable to get the large cars into the room and unable to shoot down or load as much coal as the average miner in that mine. He was paid eighty cents per ton for digging and loading the coal, and his earnings as a miner depended upon the number of tons he loaded. It appears that an average day's work was three cars, but by reason of his handling so much slate he was unable to load at any time more than two cars, and some days he could load but one. The evidence shows that he worked steadily and had worked in the mine of plaintiff in error for thirty-five years. He was a man sixty-three years of age, and while admitting that he could not load as much coal as he at one time was able to do, yet the evidence discloses that had he been permitted by the nature of the room in which he was working, he could have mined as much coal as the average miner. The evidence

shows that he was put at this work by his employer for the purpose of getting this particular part of the vein of coal mined out.

In making this award the commission computed the compensation under paragraph (*f*) of section 10 of the act, which reads as follows: "In the case of injured employees who earned either no wage or less than the earnings of adult day laborers in the same line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that is impracticable, then of neighboring) employments." Plaintiff in error contends that this paragraph has no application in this case; that the applicant was not an employee who earned either no wages or less than the earnings of an adult day laborer in the same line of employment in that locality; that he was an adult, earning what all other men were earning when working in the same line of employment, under the same conditions; that since the act expressly provides that the actual earnings of the employee where he has been employed for more than a year shall be the basis, except in cases coming under paragraph (*f*) of section 10, the actual earnings of the defendant in error here should be taken rather than the average earnings of adults in the same class of employment; and the question arises whether it was the intention of the legislature that in cases where, as here, the employee, who was an adult, able-bodied and experienced man in his line of employment, is placed, at the direction of his employer, to work under conditions which prevent his making as much as the average man in the same line of employment, such circumstances should form a sufficient basis for computing the compensation on the average earnings of adults of the same class in the same employment.

Section 10 of the Workmen's Compensation act provides the basis for computing the compensation provided for in sections 7 and 8 of the act. Paragraph (*a*) of sec-

tion 10 provides that the compensation shall be computed on the basis of the annual earnings which the injured person received as salary or wages if in the employ of the same employer during the year next preceding the injury. Employment by the same employer is by paragraph (b) of said section defined as "employment by the same employer in the grade in which the employee was employed at the time of the accident, uninterrupted by absence from work due to illness or any other unavoidable cause." Paragraphs (d) and (e) provide for the method by which the daily and weekly basis of the year's work is computed. Paragraph (f) provides for compensation for certain employees not subject to the preceding paragraphs.

It cannot be doubted in this case, from the facts shown in the evidence, that Sundermeyer did not earn during the year preceding the accident in question as much as the average miner employed in this mine. It is also evident from the testimony that this was not due to any lack of industry or capability on his part but was due to the condition of the room in which he was required by his employer to work. There appear to be no cases in this State where this exact question has been presented nor have counsel referred us to any cases in other jurisdictions, and upon investigation we have been unable to find any cases directly in point on the matter. The rule is well settled in England, however, that in computing the compensation to which an employee is entitled, those circumstances which are normal and recognized incidents to the employment are not to be considered in computing the earnings of the employee, as, for instance, the closing down of the business by reason of slackness of trade. (*White* v. *Wiseman,* 5 B. W. C. C. 654; *Anslow* v. *Cannock,* 2 id. 365.) So with stoppages due to break-down of machinery, and public holidays. Such have been held to be normal and recognized incidents of employment and are therefore not to be deducted in determining the annual earnings, (*Anslow* v. *Cannock, supra,*)

the rule there being adopted that if a stoppage is a recognized and normal incident of the employment by reason of the nature of the employment, so that the employee may reasonably be held to have anticipated such stoppage when he entered the employment, such stoppage should not be considered as affecting the question of compensation. By analogy it would seem that where the employee is shown to be in a certain class or grade of employment there would be no reason for adopting the average wages of employees employed by the same employer in such class or grade of employment as a basis for computation where the income of the employee applicant depends upon his ability and diligence in his work and not upon conditions which were not normal or recognized incidents of the employment. If Sundermeyer was unable to earn the average amount earned by miners in the mine of plaintiff in error by reason of his own inability or lack of industry he is not entitled to have his compensation computed upon a basis of the average earnings of miners in that mine. To hold him so entitled would be to place a premium upon idleness and inefficiency. The case is different, however, where his inability to earn as much as the average miner in the mine is not due to his fault or to the fact that he is below an average miner but is due to a condition under which he is put to work by his employer which is not a normal and recognized incident of the employment. In such case it would appear to have been the intention of the legislature that such employee should be entitled to compensation based upon the average wage of the adults employed in said mine in the same class or grade of employment,—*i. e.,* that of miner. It may well be said that if the situation such as exists here is a normal and recognized incident of Sundermeyer's employment by reason of the nature of that employment, so that he may be reasonably held to have anticipated such conditions when he entered the employment,

his compensation should be based upon his actual earnings during the year preceding the injury and not on the average wages of workmen of the same class. Such, however, does not appear to be the case here. While it is possible that a condition such as is shown here may be found in working out any mine, yet it cannot be said that such a condition is a normal and recognized incident to the employment of a miner, and Sundermeyer could not, in entering this employment, be reasonably held to have anticipated the conditions under which he was here compelled to work. This the plaintiff in error recognized when it paid Sundermeyer at the rate of a company-man for the work of removing the large quantities of fallen slate. It would not be in accordance with the spirit of this act to say that the defendant in error, though he had sufficient ability and industry to have earned as much as, and perhaps more, than the average miner, yet when injured while engaged in work which he was directed by his employer to follow, not a normal and recognized incident to his employment as a miner and which paid him over $500 per year less than the average miner was making in this mine, his compensation should be based solely upon his actual earnings during the year. Such a holding would be to penalize the employee for carrying out the directions of his employer when in so doing he was sacrificing $500 per year in his earnings. We are of the opinion that the legislature intended by paragraph (*f*) of section 10 to provide for cases of this character. The circuit court, therefore, did not err in confirming the award.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*