## JOHNSON ET AL. v. SWONDER.

### [No. 12,522.　Filed January 28, 1926.]

1. ADMIRALTY.—*Employment to upholster motorboat operated on Ohio river held not maritime contract.*—Employment of an upholsterer to upholster a motorboat operated on Ohio river *held* not to come within scope of maritime contract.　p. 158.

2. MASTER AND SERVANT.—*Workmen's Compensation Act applicable to injury of employee of mattress factory while upholstering motorboat operated on Ohio river.*—The Workmen's Compensation Act is applicable to an injury to an employee of a mattress factory while upholstering motorboat operated on Ohio river, the employment having no direct relation to navigation of the boat so as to bring it within admiralty jurisdiction.　p. 158.

From Industrial Board of Indiana.

Application for compensation under the Workmen's Compensation Act by Martha Johnson and another for the death of John Johnson, an employee of Ed. Swonder. From an order of the Industrial Board dismissing the application for want of jurisdiction, the claimants appeal. *Reversed.* By the court in banc.

*Posey T. Kime, James H. Meyer* and *Sumner George,* for appellants.

*Paul H. Schmidt,* for appellee.

NICHOLS, C. J.—Application before the Industrial Board for compensation under the Workmen's Compensation Act, because of the death of John Johnson, husband of appellant Martha Johnson, and father of appellant Eugene Johnson.

Before the application was filed, appellee had filed a signed report of the accident and death with the Industrial Board. By this report it appeared that the deceased was an employee of appellee, and that he came to his death by an accident arising out of and in the course of his employment while helping another employee upholster a motor boat tied to the Indiana bank of the Ohio river. That appellee's business was that

of a mattress manufacturer, and upholsterer of furniture for houses, business uses, etc., including river craft. That the occupation of the deceased was that of a "Helper to upholstering, mattress manufacturing and driver," and that he was not engaged in interstate commerce.

It appears by the evidence, so far as we need to state it for the purpose of deciding this appeal, that the decedent had been in the employ of appellee, off and on, for twelve or fourteen years, helping about appellee's place of business, and that on the day of the accident he was sent as a helper to another employee, down to the river to do some upholstering on a boat, belonging to appellee. This employee mentions the boat as a speed boat, and appellee describes it as like a car, used for business purposes during the week, and for pleasure on Sunday, "same as you would an automobile."

He used it in his business in going up and down the river to various towns. It is twenty-six feet long six feet six inches wide, and had a horsepower of 200. The full board found that it had no jurisdiction in the matter and made its order dismissing the application.

Much of appellee's brief is devoted to a discussion of the case on its merits, but in this appeal, no such questions are before us. There is but one question for our consideration, and that is as to whether the Industrial Board had jurisdiction over the subject-matter over the contract of employment, and, to determine this, we are called upon to determine whether the contract of employment was a maritime contract, or such a maritime contract that it can only be recognized in an admiralty court.

A maritime contract is thus defined in *Doolittle* v. *Knobeloch* (1889), 39 Fed. 40: "It is not easy to get an exact definition of the term 'maritime contract.' It is far easier to say what is not a maritime contract.

'The true criterion,' says that eminent jurist, Mr. Justice Bradley, 'is the nature and subject-matter of the contract, as whether it has reference to maritime services or maritime transactions.' *Insurance Co.* v. *Dunham*, 11 Wall. I. Mr. Browne, in his work on Civil Admiralty Law, (vol. 2, p. 82) asks the question: 'What contracts should be cognizable in admirality?' and answers it: 'All contracts which relate purely to maritime affairs.' 'Maritime contracts are such as relate to commerce and navigation,' says Justice Clifford. *The Orpheus*, 2 Cliff. 29. The English courts limit courts of admiralty by the locality of the contract. Our courts look to the subject-matter. *DeLovio* v. *Boit*, 2 Gall. 398. But, to be a maritime contract, * * * it is not enough that the subject-matter of it, the consideration, the service, is to be done on the sea. It must be in its nature maritime. It must relate to maritime affairs. It must have a connection with the navigation of the ship, with her equipment or preservation, or with the maintenance or preservation of the crew who are necessary to the navigation and safety of the ship."

In *In re Hydraulic Steam Dredge No. 1* (1897), 80 Fed. 545, 556, the court says: "A maritime contract must * * * concern transportation by sea. It must relate to navigation and to maritime employment. It must be one of navigation and commerce on navigable waters."

In *Bowers Hydraulic Dredging Co.* v. *Federal Contracting Co.* (1906), 148 Fed. 290, 293, the court says: "Not every contract having reference to a ship is within the admiralty jurisdiction, but only such as relate to maritime employment, such as pertain to the navigation of a ship or assist the vessel in the discharge of a maritime obligation. It is not enough that the service is to be done upon the sea or with respect to the ship."

We see nothing in the employment here involved that would bring it within the scope of these definitions of a maritime contract.

Appellants' decedent had been employed for years by appellee as a helper around a mattress and upholstering manufactory, and, incidental to that employ-

1, 2.  ment, he was sent on the day of the accident to assist in upholstering on a small speed boat, used for appellee's business during the week, and on Sundays for pleasure. It is well established that generally federal courts have exclusive jurisdiction of admiralty matters, but where, as here, the enforcement of the state statute works no material prejudice to the characteristic features of the general maritime law nor interferes with the proper harmony or uniformity of that law in its international or interstate relations, the general rule does not apply.

In *Grant Smith-Porter Ship Co.* v. *Rohde* (1920), 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 421, 25 A. L. R. 1008, a carpenter proceeding in admiralty sought damages for injuries received while at work on a partially completed vessel lying in the Willamette river. The Oregon Workmen's Compensation Law prescribed an exclusive remedy, and the question presented was whether to give it effect would work material prejudice to the general maritime law. The accident occurred on navigable waters and the cause was of a kind ordinarily within the admiralty jurisdiction. Neither the general employment contracted for nor the workman's activities at the time had any direct relation to navigation or commerce. It was essentially a local matter, and the court said: "Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere

with the proper harmony or uniformity of that law in its international or interstate relations."

Following the rule of the federal courts as above set out, the decisions of state courts are in harmony therewith. An able discussion of the question is found in *State* v. *Duffy* (1925), 148 N. E. (Ohio) 572, where the courts said: "From an examination of the many authorities we believe the rule to be that, unless some interference with maritime law and navigation or maritime trade is shown, recovery under state compensation laws will be allowed, where the parties have contracted with reference thereto and desire to regulate their rights thereby."

That appellee had contracted with appellants' decedent with reference to the compensation law of Indiana is evidenced by the fact that he promptly reported the accident to the Industrial Board, in due form. We hold that the Industrial Board erred in holding that it did not have jurisdiction of the matter here involved.

The order of dismissal is reversed, with instructions to try and determine the action on its merits.