### RINGLER v. LAING.

District Court, W. D. Washington, N. D. June 30, 1927.

No. 480.

**1. Shipping ⊚⇒3—Federal inspection of dance hall barge and permit to navigate held to convey no rights violated by municipal fire marshal's refusal to permit persons to board.**

Federal inspection of barge used for dance hall purposes which was neither a steam vessel nor a sailing vessel, and the issuance of a certificate permitting barge to navigate waters of Elliott Bay and Lake Washington *held* to confer no rights violated by fire marshal of city of Seattle in refusing to permit persons to board such barge on the ground that it was unsafe and not in compliance with fire ordinance.

**2. Admiralty ⊚⇒18—Municipal fire marshal's refusal to permit persons to board dance hall barge held not "marine tort."**

Where fire marshal prevented persons from boarding barge used as dance hall, but did not prevent navigation of the barge authorized by certificate of federal inspectors, *held* tort of such marshal, if any, was not a "marine tort."

In Equity. Suit by Montrose M. Ringler against Robert L. Laing. Complaint dismissed.

The plaintiff seeks to enjoin the defendant from enforcing Seattle fire ordinances against the scow or barge Sea Lark, and to recover resulting damages.

The testimony shows that on the date in question the plaintiff was the owner of a scow of about 37 feet beam and 200 feet length, on which was built a two-story double-floor structure designed for dance hall purposes and operated as such. Eighty per cent. of the floor space was for dancing. The scow's capacity was about 750 people. It was a wooden structure without motive power. Twenty per cent. of the floor space was used for a kitchen and concession stands. There was also constructed in the hold below the first floor a small room, the entrance to which was from the first floor by means of a trapdoor. This was for the purpose of incarcerating unruly persons on board. No pump for fire protection was provided. A hose, it is said, was laid along the edge of the lower deck of the scow, to which was attached, when being moved, a hose from the

pump of the tug fastened to the side of the scow and used as a propelling force.

A license was granted by the city on application of the plaintiff for a dance hall. The barge was floated on Elliott Bay and the waters of Puget Sound within the corporate limits of the city. This license was afterwards revoked.

On the 12th day of July, 1924, the plaintiff obtained from the Inspector of Hulls and the Inspector of Boilers (United States), of the district of Seattle, a certificate "in accordance with section 4417, R. S., as amended * * * March 3, 1905," that they had completed the "inspection of the rigged (vessel) barge named Blue Bird," that it was suitable and "permitted to navigate the waters of Elliott Bay and Lake Washington. * * *" On the 24th day of March, 1925, the board of county commissioners of King county issued a license to the Ringler Amusement Company to conduct public dances on board the barge Blue Bird for the months of April, May, and June, 1925. The barge was duly registered under the name of Sea Lark on the 7th of May, 1925. (The name was changed from Blue Bird to Sea Lark.)

The scow was heated by four wood or coal stoves. The stovepipe was carried to the roof of the scow; the pipe being put through within one inch of wood exposure. The scow, or barge, was electrically lighted; the insulation was old, and, in the language of witnesses, "rotted" at many places. The hold was open from end to end and side to side. No fire walls of any sort were provided. Some lumber and other inflammable material was stored in the hold. There was a small room in the hold as receptacle for refuse from the kitchen, in which was placed paper and other débris of inflammable substance.

In December, 1924, the plaintiff was notified that the Sea Lark could not be operated within the limits of the city of Seattle as a dance hall. It was inspected by the fire chief and fire marshal, and they found that its construction was unsafe and sufficient to carry on the upper floor only a weight of 25 pounds to the square foot, when it should carry 100 pounds; that there were no exits provided in the event of fire, and not properly provided with fire apparatus; no fire walls in the hold of the scow; and that the structure was a "fire trap." In April, 1925, with a number of persons on board, the barge was conveyed from pier 11, city of Seattle, in, about, and around the waters of Elliott Bay, within the corporate limits of the city, on two different nights, with dancing parties. The plaintiff was ar-

rested by the city of Seattle for operating a dance hall contrary to law. He was convicted in the police court, and, on appeal to the superior court of the state, the conviction was affirmed. Notices were published containing the following headline:

"Dance. Sea Lark Excursion Boat. Seattle's new floating dance pavilion. Saturday evening, April 19. (Other dates were likewise given in other notices.) Government inspected. Accommodates 1,000. Dock, Pier 9, Foot of Pike Street. 9 to 12 p. m. Olympic Serenaders. Tickets, including checking, gents, 75¢, ladies, 50¢."

On the evening of May 17, following similar notices, the fire marshal directed that navigation be not interfered with, but that persons be not permitted to board, and with a corps of assistants went to the dock and formed a line, permitted the plaintiff and his crew to enter the barge, but kept other persons who were present from entering.

The plaintiff contends that the United States has control of the navigable waters of the state, and that the city or the state under its reserve police power had no right to enact any law or ordinance, or do any act repugnant to and opposed to the right granted under the federal statutes on navigable waters, and that defendant acted without right.

Winter S. Martin, of Seattle, Wash., for plaintiff.

Thomas J. L. Kennedy, Corp. Counsel, and Ray Dumett, Asst. Corp. Counsel, both of Seattle, Wash., for defendant.

NETERER, District Judge (after stating the facts as above). [1] Federal inspection does not create a right. The barge is not a *steam vessel* nor a *sailing vessel.* Section 8172, C. S. being 46 USCA § 391 (section 4417, R. S. as amended) provides for legal inspection of the *"hull of each steam vessel"* or the *"hull of each sail vessel. * * *"*

The building code of Seattle defines a building as "any structure built for the support, shelter or inclosure of persons. * * *" And the same ordinance (31578) as amended (section 32), defines a houseboat as "a building constructed on a float, not equipped with any motive power." The same ordinance makes it the duty of the fire marshal to notify every owner or lessee of violations of the provisions of the building code, and to cause the structure to be vacated, and that means of egress, standpipes, division walls, fire doors, etc., shall be maintained in a usable and safe condition.

Ordinance 67072 authorizes the fire inspector to enter and examine any building, vessel, etc.

That the structure was clearly a houseboat, it seems apparent, and, being neither a *steam vessel* nor a *sailing craft,* government inspection avails nothing, and that the fire marshal was clearly right in preventing inhabitants of the city to go aboard the scow as unsafe and dangerous to life.

[2] However, navigation of the scow was not objected to, and the tort, if any, was not a marine tort. The relation of the tort to jurisdiction depends entirely on locality. See Emil Hoof v. Pac. Am. Fisheries (D. C.) 284 F. 174, affirmed (C. C. A.) 291 F. 306; also (C. C. A.) 279 F. 367; Phila., Wilmington & B. R. Co. v. Phila. & Havre de Grace Steam Towboat Co., 23 How. (64 U. S.) 209, 16 L. Ed. 433. The testimony is conclusive that what was done by the defendant was upon land. The defendant, standing on the dock, merely induced persons from entering upon the barge because of its unsafe condition, in no sense a marine tort.

The complaint is dismissed.