## In re FAMOUS PLAYERS LASKY CORPORATION.

## THE LLEWELLYN J. MORSE.

District Court, S. D. California, S. D. January 30, 1929.

No. 2610–M.

Lucius K. Chase, Lucius F. Chase, and Stanley N. Barnes, all of Los Angeles, Cal., for petitioner.

Silas B. Axtell and L. V. Axtell, both of New York City, and H. C. Eastham, of San Pedro, Cal., for claimant Broyles.

Donald C. Lawrence, P. J. Youngdahl, and Donald Larkins, all of Los Angeles, Cal., for claimants Carlson, Johnson, Olsen, and Davis.

NETERER, District Judge. The petition to limit liability was heretofore considered and denied. See (D. C.) 25 F.(2d) 973. The court found, and does now find, that the craft in issue was not such as comprehended within the limitation of liability statute (46 USCA §§ 181–195), and that it was, in fact, unseaworthy at the time of the casualty, of which the petitioner had knowledge, and that the negligence of the petitioner caused the death and injuries claimed by and on account of Davis, Broyles, Carlson, Olsen, and Johnson.

The claimants were employed by petitioner as seamen, among other things to navigate the Llewellyn J. Morse, known as "Old Ironsides." See (D. C.) 25 F.(2d) 973. The purpose of the employment was to sail the craft to make moving pictures. The craft was towed out from Long Beach, beyond Catalina Island, 10 or 15 miles on the Pacific Ocean, and the tug detached and the vessel navigated by the claimants and others to the vicinity of Catalina Island. This was repeated for several days. On June 26, 1926, while the vessel was lying offshore on Catalina Island and while the craft was unseaworthy, and was known by the petitioner to be unseaworthy, the claimants were ordered into the rigging, and while there, without knowledge on their part, dynamite was discharged in the masts of the ship, breaking and toppling the masts toward the afterpart of the ship, striking the yardarm and rigging where claimants were stationed or to which ropes were attached, giving claimants support, with much force, causing claimants to fall to the deck below. From the injuries sustained Davis shortly died, Carlson was confined to the hospital and his room and received medical attention for a short time, Johnson received injuries to his spine, Olsen was injured in his spine and right knee, Broyles sustained a broken femur, broken kneecap, broken right arm in two places, broken ribs, broken vertebræ, and internal and other external injuries; from the concussion he was bleeding at the mouth and the ears. Some scar appears on the right ear now from injury received. The removal of the gall bladder was necessitated.

Thereafter Cora B. Davis, as widow of Davis, on July 7, 1926, and Carlson, on December 20, 1926, respectively, filed claims under the Workmen's Compensation Insurance

and Safety Act of the state of California (St. 1917, p. 831, as amended). Notices were duly issued, and all parties were present or represented at the hearing. After testimony was heard and considered and awards made, the award to Carlson was fully paid, and all due installments upon the award made to Cora B. Davis have been paid her. No review or appeal was taken or application for further hearing made.

Payments were made to Broyles, Johnson, and Olsen without claim having been made by either of them. On advice before bringing this action they each declined to accept further payments. The receipt of these payments was not taken by either of these claimants with knowledge of their rights or in settlement of any claims for injury, and can only have the status of voluntary payments by the Commission. See United States v. Skinner & Eddy (D. C.) 28 F.(2d) 373, as to the effect of voluntary payments.

There are no dependent children of Davis, deceased, or dependents shown, except the widow, or any creditors to his estate disclosed by the evidence. The legal status of Mrs. Davis is therefore not enlarged or changed in this proceeding as administratrix.

The first question for decision is: Are the claims for relief limited to the Workmen's Compensation Act of California? Was the engagement of and service in the employment such that the rights of the parties should be controlled by the local law? I think not. The employment and service was clearly maritime, as able seamen in navigating the craft on the waters of the Pacific Ocean. The fact that the business of sailing the craft was to take moving pictures, and that some of the claimants were in uniform, is not controlling or material. The situs of the casualty was the Pacific Ocean. The craft was not in port. The gist of the claim is tort. The basis of liability under the Workmen's Compensation Act of California is liability without fault. Tort may or may not be an element of liability under the act. The rule that in contract matter admiralty jurisdiction depends upon the nature of the employment, and not on locality, is stare decisis. See Grant-Smith-Porter Co. v. Rhode, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008, and cases cited; Ringler v. Laing (D. C.) 21 F.(2d) 794. While the service may have been in the nature of actors in a play, they were and are, in fact, seamen in the true sense of that word, men who did handle, reef, and steer, and did so act on this craft or ship. The claims obviously are of maritime nature, and, having petitioned to limit liability and being denied, the petitioner may not challenge the court's jurisdiction to control complete remedy. Hartford Accident & Indemnity Co. v. Southern Pacific, 273 U. S. 207, 47 S. Ct. 357, 71 L. Ed. 612; In re Titanic (D. C.) 204 F. 295.

Neither local law nor decision can limit admiralty jurisdiction unless clearly of local nature. Workman v. New York City, 179 U. S. 552, 21 S. Ct. 212, 45 L. Ed. 314. See, also, Union Fish Co. v. Erickson, 248 U. S. 308, 39 S. Ct. 112, 63 L. Ed. 261; Western Fuel Co v. Garcia, 257 U. S. 233, 42 S. Ct. 89, 66 L. Ed. 210; Washington v. Dawson Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646; Grant-Smith-Porter Co. v. Rhode, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008.

There is no doubt states may by legislation change maritime law of local application, but not where the claim is tort and the employment and work are maritime. Southern Pacific Co. v. Jensen, 244 U. S. 216, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Western Fuel Co. v. Garcia, 257 U. S. 233, 42 S. Ct. 89, 66 L. Ed. 210. See, also, Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Washington v. Dawson, supra. In all cases so far disclosed, the United States Supreme Court has uniformly held that where the employment is nonmaritime or employment in service of mixed relation, nonmaritime and maritime, having particular local application, may state legislation control liability status. In Grant-Smith-Porter Ship Co. v. Rhode, supra, the contract was nonmaritime, the service maritime, and both parties accepted the state Compensation Law. In State Industrial Commission of State of New York v. Nordenholt Corporation, 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013, claimant was killed while on the dock unloading a ship. The court held the employment was nonmaritime, but the service maritime. In Millers' Indemnity Underwriters v. Braud, 270 U. S. 59, 46 S. Ct. 194, 70 L. Ed. 470, a diver submerged himself from a floating barge in a navigable river to saw off piling driven into the ground. The act was foreign to commerce or navigation; the work done was in fact on land under water, the title to which was in the State, subject only to the right of navigation over the water under control of the United States. In Alaska Packers' Association v. Indemnity Accident Commission of California, 276 U. S. 467, 48 S. Ct. 346, 72 L. Ed. 656, the injured party stood on land and pushed a stranded boat into naviga-

ble water, a mixed maritime and nonmaritime relation. In the case of Sultan Ry. & Timber Co. v. Department of Labor and Industries of Washington, 277 U. S. 135, 48 S. Ct. 505, 72 L. Ed. 1820, logs were boomed and floated on a navigable river to a local sawmill.

In Ketchikan Lumber & Shingle Co. v. Bishop (C. C. A.) 24 F.(2d) 63, the issue was not tort, and the employment was nonmaritime. In Rosengrant v. Havard, 273 U. S. 664, 47 S. Ct. 454, 71 L. Ed. 829 (213 Ala. 202, 104 So. 409) deceased was killed by accidental discharge of a gun while employed as a tallyman in the lumberyard, while standing on a schooner moored in the river. The contract of employment the court held was nonmaritime. In State Industrial Board of State of New York v. Terry & Tench Co., 273 U. S. 639, 47 S. Ct. 90, 71 L. Ed. 817, reversing Lahti v. Terry Trench Co., 240 N. Y. 292, 148 N. E. 527, the issue is identical with Braud, supra, except the employee stood on a float on the water to repair a pile driven in the ground under the water. In the Toland Case, 258 Mass. 470, 155 N. E. 602, a floating dredge without motive power, on which the engineer received injury, was held within the State Compensation Act upon authority of the Braud Case. Repairing upholstering in a speedboat in navigable water was incidental to the regular work done on land, and held within the state provision. See Johnson v. Swonder, 84 Ind. App. 155, 150 N. E. 615.

The Supreme Court of California, in London Guarantee & Accident Co., Limited, v. Industrial Accident Commission of California et al., 265 P. 825, held that an apprentice employed by a company engaged in the operation of a fleet of fishing vessels from Santa Monica Bay for the accommodation of the people seeking pleasure in deep-sea fishing, and who was drowned while on his way in a small boat from the pier to one of the larger boats, had no direct relation to interstate or foreign commerce or navigation. To the same effect is Balestrere v. Industrial Accident Commission (Cal. App.) 266 P. 968, and also United Dredging Co. v. Industrial Insurance Accident Commission (Cal. App.) 267 P. 763. In none of the cases were the claimant seamen employed for or engaged in navigating a craft or ship. The fact that the craft in this case was not navigated more than 10 or 15 miles a day is immaterial, since none of the work had any relation to land.

■ Second. Are the claimants estopped from asserting a claim in admiralty? The burden of establishing accord and satisfaction is upon the party asserting it—the petitioner. See U. S. v. Skinner & Eddy Corp. (D. C.) 28 F.(2d) 373. It must be obvious that the acceptance of payment by the claimants Broyles, Olsen, and Johnson was not with any understanding of their rights, and there was no meeting of the minds of either Johnson or Olsen or Broyles and the representatives of the state, as agents for the petitioner under the California law, as to settlement and adjustment. No claim had been filed or demand made against the fund or indemnity provided by the petitioner pursuant to local statute. Upon being advised, payments were repudiated and no further payments received.

■ The relation of Davis and Carlson are distinguished in this: That demand was made by formal claim filed July 7, 1926, by Davis, and December 18, 1926, by Carlson. Testimony was heard, the issue was fully determined as to the relation of each claimant, findings and awards were duly entered, and the respective issues therefore finally adjudicated, which findings and awards have the force and effect of judgments. See Williams v. Sou. Pac., 54 Cal. App. 571, 202 P. 356, which cites Case of Hunnewell, 220 Mass. 351, 107 N. E. 934; Centralia Coal Co. v. Industrial Acc. Com., 297 Ill. 513, 130 N. E. 725; Thaxter v. Finn, 178 Cal. 270, 173 P. 163; Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 156 P. 491, Ann. Cas. 1917E, 390.

There can be no doubt that claimants and the petitioner could have adjusted and compromised any claim or claims against the petitioner, and such adjustment would be binding unless one or the other of the parties was overreached. I think the same relation obtains where the fund or indemnity is provided pursuant to the law of the state, and claimants, with full knowledge of their rights, demanded an adjustment and settlement, and after full hearing both parties having invoked the local law through the Commission, which, under the California law, is a court of limited jurisdiction, and judgment entered, which was not appealed from, or reviewed, or modified, payment accepted in full by one and all due payments under the award received by the other, covering a period of more than two years and four months after filing the claim, in this proceeding, the last payment of which was received eight days prior to the trial of this case. The invoking the provisions of the state act bears near relation to an acceptance as stated by the Supreme Court in the Rhode Case, supra. These parties are bound by the award and judgment, and may not collaterally attack it or void it in this proceeding.

■ As to Olsen, age 28, and Johnson, age

30, each capable of earning $2,000 "and found" a year, some injuries were sustained. The injuries complained of upon this trial are not the injuries reported at the time of the accident, or for which treatment was given. Each of these parties, after three or four months, was able to engage in work. Work may have emphasized injury, at the time deemed trivial, but there is no evidence to this effect. I think both these men are entitled to some allowance. There was some pain; no doubt there was loss of employment, and there may be some impairment; but I am not convinced that there is injury of any permanent nature. The disability, if any, at the present time appears to be more psychological than physiological, for which, of course, no allowance can be made, in view of the physical condition established immediately after the accident.

An award of $2,250 will be made to Olsen and a like award to Johnson, which will fully compensate them for all pain and suffering and injuries sustained and loss of time, so far as the law is competent in the premises.

■■■■ As to the claim of Broyles, his injuries were very serious. He must have suffered great pain. He has already endured one major operation. While he has practical use of his injured right arm, the use is not normal. The injury to the arm is permanent. He will need three major operations, at least two of which are in a nature imperative, one on the abdomen and the other to relieve a developed condition of the coccyx as a result of the accident, and the third and possibly fourth may result in amputation of the right leg. In either event the leg, if saved, will be from 1½ to 3 inches short, and may be without flexibility at the knee. Some surgeon testified that an artificial leg would be more useful than the present limb restored to any condition surgery can afford.

Broyles was 28 years of age at the time of the accident. His life expectancy was 36 years. His earning capacity for the year immediately prior to the accident was $150 a month "and found" as a seaman, approximately $2,500 a year. He has been totally disabled from the time of the accident—2 years and 5 months. He has sustained a total loss of $6,041. The operations that will be necessary on the abdomen, coccyx, and right leg, as shown by the testimony, will cost, based upon the testimony before the court, not less than $2,000. He will necessarily endure much pain in these major operations. At least one year will be necessary to cover the operations, and probably more, and a to-

tal loss of at least one year, or $2,500, making a total loss and necessary expenditures of $10,541.

I think the court likewise might take into consideration the fact that in asserting these claims, while not a basis for recovery, these claimants necessarily were required to employ proctors for that purpose, and will be required to pay them reasonable compensation. Broyles will be maimed for life. Aside from his right arm, he is reasonably certain, from the surgeon's testimony, to have a stiff, short, right leg, or an artificial leg. In the conclusion with relation to the costs of operation, I have not considered the expense of an artificial leg as a separate item. In addition to the loss sustained and fixed, an award for the pain and suffering endured, and to be endured in these major operations to follow, and permanent injury to his right arm and right leg, and loss of further earnings, an award of $18,000 will be made, making a total recovery of $28,541.

A formal decree may be prepared and served on the other side, and may be submitted to me in Seattle.