GRANT SMITH-PORTER SHIP COMPANY *v.* ROHDE.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 35. Argued December 7, 1920.—Decided January 3, 1922.

A workman employed generally as a carpenter by a builder of seagoing vessels was injured through the employer's negligence, while engaged in construction work on a ship nearly completed and

launched and lying in navigable waters of the United States in Oregon. Both parties had accepted the Oregon Workmen's Compensation Law, which in the absence of its rejection by either employer or employee requires the employer to make payments, including deductions from the employee's wages, to a compensation fund, specifies the sums which the employee may receive therefrom in case of injury, and declares they shall be in lieu of all claims against his employer on account of the injury.

*Held:* (1) The general doctrine is that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality.   P. 476.

(2) The general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction when lying on navigable waters within a State.   P. 477.

(3) But in this case, since the contract for the construction of the vessel was non-maritime, and since neither the employment of the workman nor his activities at the time of injury had any direct relation to commerce or navigation, the application of the Oregon Compensation Law, with reference to which employer and employee had contracted, could not materially affect any of the rules of the sea whose uniformity is essential, and was therefore permissible.   P. 477.   *Union Fish Co.* v. *Erickson,* 248 U. S. 308; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, and other cases, distinguished.

(4) In view of its exclusive features, the Oregon Act abrogated the right of the employee to recover damages in an admiralty court, which otherwise would exist.   P. 478.

THIS was a proceeding in admiralty to recover damages for personal injuries resulting to an employee. The questions are determined on a certificate from the court below stating the facts.

*Mr. Charles A. Hart,* with whom *Mr. Charles H. Carey* and *Mr. James B. Kerr* were on the brief, for Grant Smith-Porter Ship Company.

Rohde's contract of employment required services as a carpenter and joiner in the construction of a ship before and after launching; and neither before nor after launching is such work maritime in character.

So far as we have been able to find this court has not been asked to sustain admiralty jurisdiction over torts which apart from the circumstance of locality were in no respect maritime. Distinguishing *Thomas* v. *Lane,* Fed. Cas. No. 13,902. *The Plymouth,* 3 Wall. 20; *North Pacific S. S. Co.* v. *Hall Bros. Co.,* 249 U. S. 119.

In one class of cases several times before this court, the test of locality alone has proven insufficient: Negligent operation of vessels resulting in damage to structures in channels is cognizable in admiralty if the structure injured is in the channel for purposes of navigation and not otherwise; and this is true even though the structure is as firmly fixed to the bottom of the channel as are the piers of a railroad bridge. *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Philadelphia Towboat Co.,* 23 How. 209; *The Blackheath,* 195 U. S. 361; *Cleveland Terminal R. R. Co.* v. *Cleveland S. S. Co.,* 208 U. S. 316; *Martin* v. *West,* 222 U. S. 191; *The Raithmoor,* 241 U. S. 166.

There are obvious difficulties in the way of extending admiralty jurisdiction to a tort arising *ex contractu* when the contract itself is non-maritime. The grant of admiralty jurisdiction contemplates the administration of the general rules of the maritime law, *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; and there is an apparent anomaly in the extension of that jurisdiction, because of the accident of locality, to rights of action founded upon and controlled by state law.

If the jurisdiction may be extended through the chance of locality to transactions non-maritime in character, the necessary consequence is the extension of the general rules of the maritime law to such transactions. If the servant injured after launching is to look to the maritime law for his remedy, the master necessarily must be governed by that law in contracting for his labor.

The nature and extent of a duty imposed by law because of a contract relation cannot be determined with-

out consideration of the contract itself. The limitation upon the duty of a common carrier to a free passenger by the terms of the pass illustrates the point. *Northern Pacific Ry. Co.* v. *Adams,* 192 U. S. 440. Therefore the assumption of jurisdiction to determine the tort question implies a like assumption of jurisdiction to determine the contract relations of the parties; and to apply this to ship construction results in an encroachment upon the power of the States not hitherto attempted.

No requirement of maritime commerce compels uniformity in shipbuilding throughout the country; and it seems obvious that nothing in state regulation of the master and servant relation in ship construction work interferes with the proper harmony and uniformity of the maritime law in its international and interstate relations.

In each of the recent master and servant cases in which admiralty jurisdiction was sustained, the decision made clear that the employment was a maritime contract and the work maritime in its nature. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Knickerbocker Ice Co.* v. *Stewart, supra.*

The application of the Oregon Act to shipbuilding affects in no way the needed uniformity in maritime matters. Unlike the New York Act, the Oregon statute wipes out no rights or obligations existing under the maritime law; nor does it, of its own force, alter in the slightest degree the rights and remedies enforcible in the courts of admiralty. Its applicability results from the election of the party. The decisions in the *Jensen* and *Stewart Cases* indicate that the New York Act was declared inoperative as to maritime work because it was a compulsory compensation law.

*Mr. Harry A. Hegarty,* with whom *Mr. Lee Roy E. Keeley* and *Mr. C. Larrimore Keeley* were on the brief, for Rohde.

The question certified does not touch upon the construction of any contract between the libelant and the respondent, or between the respondent and the Fleet Corporation.

The true test is locality—navigable waters of the United States. *Thomas* v. *Lane,* Fed. Cas. No. 13,902; *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52; *Johnson* v. *Chicago & Pacific Elevator Co.,* 119 U. S. 388; *Martin* v. *West,* 222 U. S. 191; *The Plymouth,* 3 Wall. 20; *Tucker* v. *Alexandroff,* 183 U. S. 424.

The Oregon statute, in so far as it affects purely maritime matters, is not essentially different from the New York statute condemned in *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Tucker* v. *Alexandroff, supra.*

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

Asking for instruction, the court below has sent up the following certificate and questions. Judicial Code, § 239.

" This cause came to the Circuit Court of Appeals for the Ninth Circuit upon an appeal from the United States District Court of Oregon from a judgment in favor of the appellee as libelant in that court, and against the appellant as libelee in that court, for the sum of $10,000. The cause was a libel in admiralty for damages for injury sustained.

" Libelant, Herman F. Rohde, received injury while at work on a partially completed vessel lying at a dock in the Willamette River forming a part of the shipbuilding plant of respondent, Grant Smith-Porter Ship Company. The character of the work being done by libelant and the

operations of respondent of which the work formed a part are as follows: Respondent, Grant Smith-Porter Ship Company, at and prior to the time of libelant's injury was engaged in constructing steam vessels for the United States government under contract with United States Shipping Board Emergency Fleet Corporation. One of these steam vessels was the steamer 'Ahala.' Prior to the time of libelant's injury this steamer had been launched in the Willamette River at Portland, Oregon, which river is a part of the navigable waters of the United States. At the time of libelant's injury, April 10, 1919, the vessel had been substantially completed, but was not ready for delivery and all of the work in process at the time of libelant's injury was work pertaining to the construction of the vessel by respondent, Grant Smith-Porter Ship Company. Libelant's work was that of a carpenter or joiner and at the time of the injury he was at work constructing a bulkhead enclosing certain tanks in the vessel.

" Libelant began this proceeding in personam against respondent in the District Court of the United States for the District of Oregon sitting in admiralty. Negligence of the employer, respondent Grant Smith-Porter Ship Company, in the construction and maintenance of a scaffold is alleged as the ground for recovering of damages.

" At and prior to the time of libelant's injury, there was in effect the so-called '.Workmen's Compensation Law' of the State of Oregon (Chapter 112, Laws of Oregon, 1913, as amended Chapter 271 Laws of 1915, and Chapter 288 Laws of 1917). The law applied to hazardous occupations (including shipbuilding) within the State of Oregon. An option is given both to employers and workmen to accept the compensation law or to reject it; that is, both employers and workmen are required to notify the proper state authority if it is desired not to come under the act. Without such notice, the law is applicable and payments are required to be made by the employer, which

payments include deductions from the wages of workmen. Workmen who thus come under the act are entitled to receive certain specified payments in the event of injury, and the act provides (Section 12): 'And 'the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury or death, except as hereinafter specially provided.'

"At and prior to the time of libelant's injury, respondent was engaged in shipbuilding operations on the Willamette River at Portland within the State of Oregon; and libelant was in its employ as a carpenter or joiner in such shipbuilding operations. Prior to the time of the injury, neither respondent, the employer, nor libelant, the workman, had notified the appropriate state authority of any rejection of the provisions of the Workmen's Compensation Act, and up to the time of the injury, respondent, the employer, had taken all the steps required by the compensation act to bring the work under its provisions; and there had been deducted and paid over to the commission administering the compensation fund payments from wages earned and paid libelant, the workman, up to the time of the injury. Payroll deductions from the wages of libelant and other workmen were made without regard to whether or not the work done by such workman was on vessels under construction on the ways or vessels under construction after launching.

" Questions of law concerning which the Circuit Court of Appeals of the Ninth Circuit desires the instruction of the Supreme Court are: 1. Is there jurisdiction in admiralty because the alleged tort occurred on navigable waters? 2. Is libelant entitled because of his injury to proceed in admiralty against respondent for the damages suffered? "

The contract for constructing "The Ahala" was non-maritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters,

neither Rohde's general employment, nor his activities at the time had any direct relation to navigation or commerce. *Thames Towboat Co.* v. *The Schooner "Francis McDonald,"* 254 U. S. 242. The injury was suffered within a State whose positive enactment prescribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. *Union Fish Co.* v. *Erickson,* 248 U. S. 308. Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Western Fuel Co.* v. *Garcia, ante,* 233.

The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled. *Waring* v. *Clarke,* 5 How. 441, 459; *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Philadelphia Towboat Co.,* 23 How. 209, 215; *The Propeller Commerce,* 1 Black, 574, 579; *The Plymouth,* 3 Wall. 20, 33; *Leathers* v. *Blessing,* 105 U. S. 626, 630; *Martin* v. *West,* 222 U. S. 191, 197. See *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 59; and Hughes on Admiralty, 2d ed., p. 195.

The Workmen's Compensation Law of Oregon declares that when a workman subject to its terms is accidently injured in the course of his employment he "shall be entitled to receive from the Industrial Accident Fund

hereby created the sum or sums hereinafter specified and the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury or death  . . ."

In *Western Fuel Co. v. Garcia, supra,* we recently pointed out that, as to certain local matters regulation of, which would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by state statutes. The present case is controlled by that principle. The statute of the State applies and defines the rights and liabilities of the parties. The employee may assert his claim against the Industrial Accident Fund to which both he and the employer have contributed as provided by the statute, but he can not recover damages in an admiralty court.

This conclusion accords with *Southern Pacific Co. v. Jensen,* 244 U. S. 205; *Chelentis v. Luckenbach S. S. Co.,* 247 U. S. 372; *Union Fish Co. v. Erickson,* 248 U. S. 308; and *Knickerbocker Ice Co. v. Stewart,* 253 U. S. 149. In each of them the employment or contract was maritime in nature and the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity. Here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential.

As pointed out in *The Ira M. Hedges,* 218 U. S. 264, 270, "there sometimes is difficulty in distinguishing between matters going to the jurisdiction and those determining the merits." The certified questions are not wholly free from uncertainty of that nature and we therefore state our view of their real intendment.

Construing the first question as meaning to inquire whether the general admiralty jurisdiction extends to a

proceeding to recover damages resulting from a tort committed on a vessel in process of construction when lying on navigable waters within a State, we answer, yes.

Assuming that the second question presents the inquiry whether in the circumstances stated the exclusive features of the Oregon Workmen's Compensation Act would apply and abrogate the right to recover damages in an admiralty court which otherwise would exist, we also answer, yes.

MR. JUSTICE CLARKE concurs in the result.

THE CHIEF JUSTICE took no part in the decision of this cause.