## DOURRIEU v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.
### No. 14994.

Court of Appeal of Louisiana. Orleans.
Jan. 21, 1935.

Harold A. Moise, of New Orleans, for appellant.

Lewis R. Graham and H. R. Cabral, both of New Orleans, for appellee.

JANVIER, Judge.

This proceeding was begun by a petition to the civil district court for the parish of Orleans to obtain an award in workmen's compensation for the death of Eugene Dourrieu, who was drowned in the Industrial Canal at New Orleans on April 23, 1931, while in the service of the board of commissioners of the port of New Orleans. The petition was filed by Mrs. Dourrieu on her own behalf as the widow of the said deceased employee and also on behalf of her children, Eugene, who was about 11 years of age at the time of his father's death, and Thelma, who was over the age of 18, but on whose behalf claim is nevertheless made because her alleged physical condition, it is asserted, rendered her "physically incapable of wage earning." The defendant is the said board of commissioners of the port of New Orleans.

By a plea to the jurisdiction, defendant challenges the rights of the courts of the state to hear the controversy, contending that the case is one exclusively within the cognizance of a federal court of admiralty under the provisions of the Constitution and of the Judicial Code of the United States, and, by exception of no cause of action, defendant also puts at issue the right of petitioners to claim under the state workmen's compensation laws (Act No. 20 of 1914, as amended), asserting that, under the said Constitution and the said Judicial Code, the only remedy available is such as is recognized in admiralty.

By supplemental petition, there is presented an alternative prayer for damages ex delicto in the event we should conclude that the proceeding under the compensation laws may not be maintained, but, for reasons which we shall later set forth, we need not concern ourselves with this alternative prayer.

In the district court, the exceptions were overruled, and there was judgment for petitioners in the sum of $13.50 per week for 300 weeks and for Mrs. Dourrieu in the further sum of $150 for funeral and incidental expenses, all in accordance with the compensation statute. Defendant has appealed.

The facts, and they are not seriously in dispute, we find to be as follows:

The board of commissioners of the port of New Orleans is a political corporation or board created by the laws of the state, and is commonly known as "The Dock Board."

Among the powers intrusted to, and the duties imposed upon, the said board by the statute which creates it (Act No. 70 of 1896) are found the following: " * * * To take charge of and administer the public wharves of the Port of New Orleans; to construct new wharves where necessary; and to erect sheds thereon to protect merchandise in transit; to place and keep the wharves, sheds, levees and approaches in good condition; to maintain sufficient depth of water and to provide for lighting and policing such wharves and sheds. * * *" Section 2.

The Industrial Canal is an artificially constructed navigable body of water, which provides for vessels and other water craft a connection between the Mississippi river on the one end and Lake Pontchartrain on the other, and which, also, on its banks, affords docking or wharfage space for such vessels and water craft.

The dock board, at the time of the drowning of Dourrieu, was engaged in the removing, by means of a steel suction dredge, of mud and silt from the bottom of the canal at a point some 50 or 60 feet from its bank, but not in the main channel thereof, and in conveying,

through pipes or flumes, the said mud or silt to the adjacent bank, and in depositing it there for the purpose of filling the lowlands contiguous to the canal.

The evidence leaves some slight doubt on the question of whether the operation had been undertaken primarily for the purpose of deepening the waterway or whether the principal object was the filling and leveling of the adjacent lowlands, but, if that question is of importance, and we do not believe that it is, we conclude from the record that the officials of the defendant board, when they undertook the work, were intent rather upon the latter object than upon the deepening of the waterway. The depth of the water at that point was already greater than was required by the draft of any vessel which had ever passed through or into the canal, and the dredging was being done considerably to one side of the passageway portion or channel commonly used by large vessels.

Shortly before the accident, Dourrieu had been sent out upon the floating pontoon line to make certain connections to the pipes through which the water, silt, and mud passed, and which pipes extended from the dredge to the shore. While he was on this floating pontoon, apparently as the result of wash caused by a passing boat, he was precipitated into the water of the canal and was drowned.

Only issues of law are tendered; the questions with which we are concerned being the following:

(1) Is the right to recover for the death of Dorrieu under such circumstances cognizable in admiralty, and is the remedy afforded by the State Compensation Law inapplicable?

(2) Is the defendant board, because of the fact that it is an agency of the state, immune to suits of this character?

A third question, which affects only the amount of the award, arises over the fact that the daughter, Thelma, was, at the time of her father's death, over 18 years of age.

There are, as we have stated, two exceptions on which defendant relies: (1) It objects to the jurisdiction of the courts of the state to entertain any suit growing out of Dourrieu's death; and (2) contending that Dourrieu, at the time of his death, was engaged upon navigable waters and was performing services under a maritime contract, it asserts that there can be no recovery in compensation.

There is a widespread misunderstanding of the doctrine announced in Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 529, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas.

1917E, 900. The question of jurisdiction as between the courts of the state and the courts of the United States is not involved in cases such as that, nor in cases such as the one at bar. In the many cases which have involved claims for compensation under state statutes and in which the injuries were sustained, or the death occurred, under circumstances which might have been cognizable in admiralty, there has been no pronouncement of the exclusiveness of the jurisdiction of courts of the United States. All that has been said is that, if the case is one cognizable in admiralty, then the remedy which may be afforded, in whatever court, must be the remedy which is afforded in admiralty, or which is known to the common law, as distinguished from the statutory law. It has always been recognized that such suitors have not, by the Judicial Code of the United States, been deprived of their formerly existing common-law rights where those rights are not in conflict with the remedy known to admiralty and where "the common law affords a remedy," and, where the common law affords such a remedy, it may be sought in a state court. In a very late case on the subject, London Guarantee & Accident Co. v. Industrial Accident Commission, 279 U. S. 109, 49 S. Ct. 296, 297, 73 L. Ed. 632, the plaintiff did not contend that such a cause of action is cognizable only in an admiralty court of the United States, but, as stated by Mr. Chief Justice Taft: "* * * that under section 256 of the Judicial Code [28 USCA § 371] this is a cause of action in admiralty, enforceable in a court of admiralty, *or at common law if the latter affords a remedy,* and is not a matter of which cognizance may be had under a state Workmen's Compensation Act." (Italics ours.)

In a most interesting article, appearing in 53 American Law Review, p. 749, "Is Every County Court in the United States a Court of Admiralty?" the subject is discussed, and the author states that: "It would seem then from this decision (the Jensen Case) that every court of common law of the United States and of the several states is now also a court of admiralty; that is to say, where the cause of action whether contract or tort is maritime, the court of common law, if it has jurisdiction, is to administer and apply not the common law rules and principles, but the admiralty and maritime law of the United States."

See, also, "Admiralty Jurisdiction and Uniformity of Maritime Workers' Rights," Tulane Law Review, vol. 5, p. 123.

In Watkins v. Jahncke Dry Docks, Inc., 12 La. App. 350, 125 So. 469, 470, we discussed the

question of whether or not there is raised in such cases as this any jurisdictional question as between the state courts and the federal courts. In that opinion appears the following: "* * * The United States Supreme Court has several times held that the question of jurisdiction as between the federal courts and the state courts is not involved in matters of this kind, and that the state courts may decide the issues presented, subject only to the limitation that the remedy which the state court may afford shall be such remedy as is provided by the 'common law' as distinguished from some special remedy furnished by particular legislation, such as state compensation statutes."

In paragraph 3 of the syllabus in Messel v. Foundation Co., 274 U. S. 427, 47 S. Ct. 695, 71 L. Ed. 1135, appears the following: "Article 2315, Louisiana Rev. Code, supra, furnishes the equivalent of a 'common law remedy,' saved to suitors in the state court by section 9, Judiciary Act of 1789, section 256, Jud. Code [28 USCA § 371]."

In the Messel Case the Supreme Court of Louisiana had held that the state courts were without jurisdiction. The Supreme Court of the United States in Panama Railroad Co. v. Vasquez, 271 U. S. 557, 46 S. Ct. 596, 70 L. Ed. 1085, discussed this question and said:

"The sole question presented is whether state courts may entertain such actions, the defendant's contention being that they are cognizable only in the federal District Courts. * * *

"This clause is a continuation of a like clause in the Judiciary Act of 1789 * * * and always has been construed as permitting substantive rights under the maritime law to recover money for service rendered, or as damages for tortious injuries, to be asserted and enforced in actions in personam according to the course of the common law. * * * And it uniformly has been regarded as permitting such actions to be brought in either the federal courts or the state courts, as the possessor of the right may elect."

The true question, then, is, not what court may afford the remedy, but what remedy may be afforded.

In the celebrated Jensen Case, supra, it was held that a state workmen's compensation law, being unknown both to admiralty and to the common law, cannot have application where it "works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." Follow-

ing the Jensen Case, many efforts were made to prepare legislation, both state and federal, which would permit the application of state compensation laws to maritime injuries, but these efforts were unsuccessful, and the doctrine announced remains practically unaltered to-day. It is well recognized, in the Jensen Case particularly, that article 3, § 2, of the Constitution of the United States, extends the judicial power of the United States "to all Cases of admiralty and maritime Jurisdiction," and that article 1, § 8 thereof, confers upon Congress power "to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers," etc., and that consequently, when, in section 9 of the Judiciary Act of 1789, 1 Stat. 76, 77, the District Courts of the United States were given "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction; * * * saving to suitors in all cases, the right of a common law remedy, where the common law is competent to give it," the grant was exclusive, and prevented any state from providing by statutory enactment any remedy except such as is known to admiralty, or is afforded "by the common law."

▮ It is well recognized that the test of admiralty jurisdiction in matters involving contract is the nature of the contract. As was said by the Supreme Court of the United States in Grant Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 158, 66 L. Ed. 321, 25 A. L. R. 1008: "The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this Court that it must now be treated as settled."

▮ That recovery in compensation cases is based on contract is also well recognized. In State Industrial Commission of State of New York v. Nordenholt Corporation, 259 U. S. 263, 42 S. Ct. 473, 474, 66 L. Ed. 933, 25 A. L. R. 1013, the Supreme Court said: "An award under the Workmen's Compensation Law is not made on the theory that a tort has been committed; on the contrary, it is upon the theory that the statute * * * is read into and becomes a part of the contract" of employment.

In Louisiana this view has been adopted. See Labourdette v. Doullut, etc., Co., 156 La. 412, 100 So. 547; Legendre v. Barker, 5 La. App. 621; Burson v. Ohio Oil Co., 6 La. App. 739.

▮ But the principle announced in the Jensen Case is not, as is very generally believed, that in no case where an injury results or

death occurs, where the employee was engaged under a contract maritime by nature and was at work on navigable waters, may there be a recovery in compensation, but that the exclusive features of the constitutional grant prevent any other remedy than one known to admiralty only where, under the facts of the case, such other remedy "contravenes the essential purpose expressed by * * * Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." The test, then, in such cases as this is, not solely whether the accident occurred on navigable waters and the contract has maritime characteristics, but whether to permit recovery under the statute would contravene the essential purposes expressed by Congress or work material prejudice to necessary uniformity.

That to employees in some maritime occupations state compensation statutes are sometimes applicable has often been recognized by the Supreme Court of the United States. In Millers' Indemnity Underwriters v. Braud et al., 270 U. S. 59, 46 S. Ct. 194, 195, 70 L. Ed. 470, is found a case which much resembles the case at bar. There the deceased employee for whose death recovery was sought under a state compensation statute "submerged himself from a floating barge anchored in the navigable Sabine River 35 feet from the bank, for the purpose of sawing off the timbers of an abandoned set of ways, once used for launching ships, which had become an obstruction to navigation. While thus submerged, the air supply failed, and he died of suffocation." The defendant insisted "that there could be no recovery under the state statute" and "that the claim arose out of a maritime tort." The United States Supreme Court said: "In the cause now under consideration the record discloses facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state Compensation Act; but the matter is of mere local concern and its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law."

In Sultan Ry. & Timber Co. v. Department of Labor, etc., 277 U. S. 135, 48 S. Ct. 505, 506, 72 L. Ed. 820, the Supreme Court said: "It is settled by our decisions that, where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations, and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity. Grant Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008; Miller's Indemnity Underwriters v. Braud, 270 U. S. 59, 46 S. Ct. 194, 70 L. Ed. 470; Alaska Packers' Ass'n v. Industrial Accident Commission (April 9, 1928) 276 U. S. 467, 48 S. Ct. 346, 72 L. Ed. 656."

We do not find from reported decisions that the courts of the United States have considered in this connection whether a state compensation statute may be applied in the case of an employee drowned while deepening a channel in navigable waters, and that is the question which would have been presented here, if the primary purpose of the work had been the deepening of the channel and not the filling of the bank alongside. We find little room for distinction between the case of an employee who is deepening a channel and the case of an employee engaged as the deceased was in Miller's Indemnity Underwriters v. Braud, supra, in "sawing off the timbers of an abandoned set of ways, once used for launching ships, which had become an obstruction to navigation." All the stronger is the application of the principle where the principal object is the filling of the bank and the deepening of the channel is only the incidental result.

We find, too, that the courts of other states have answered the identical question and have held that the application, to employees engaged in dredging, of state compensation statutes, would not interfere with the characteristic and necessary harmony and uniformity of the maritime law.

In Wooley v. Wichert Co., 275 Pa. 167, 118 A. 765, the deceased employee was engaged on a derrick boat anchored in navigable waters and was assisting in excavating the channel. The court held the State Compensation Act to be applicable. Likewise, in Toland's Case, 258 Mass. 470, 155 N. E. 602, the deceased employee was engineer on a dredge digging in the harbor at Boston. Compensation was awarded. A similar legal conclusion was reached in Lahti v. Terry & Tench Co., 240 N. Y. 292, 148 N. E. 527.

That each case of this nature must stand upon its own bottom and that under the facts of each must be determined the question of whether the application of the State Compensation Law would interfere with uniformity in matters of admiralty is well recog-

nized in Baizley Iron Works et al. v. Span, 281 U. S. 222, 50 S. Ct. 306, 307, 74 L. Ed. 819. There the Supreme Court of the United States said: "What work has direct relation to navigation or commerce must, of course, be determined in view of surrounding circumstances as cases arise."

See, also, Dawson et ux. v. Jahncke Dry Docks, Inc., 18 La. App. 368, 131 So. 743.

Bearing in mind, then, that this question must be decided in each case under the facts of that particular case, we find ourselves unable to see that, to permit the compensation statutes to apply to local employees engaged in dredging, can have anything more than a most insignificant and incidental effect upon the general uniformity which is desired among the several states upon matters relating to interstate and foreign maritime commerce.

■ In the Jensen Case, supra, the court held that such an act could not be applied to stevedores and longshoremen actually engaged upon a vessel, for the reason that all other states might apply other and different statutes in such cases, and that "the necessary consequence would be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish; and freedom of navigation between the states and with foreign countries would be seriously hampered and impeded." We see no such result here, and therefore hold that the state compensation statute is applicable.

■ Since the compensation statutes of Louisiana are applicable here, necessarily the alternative prayer for damages ex delicto falls of its own weight because, wherever the compensation laws are applicable, the remedy which they provide is exclusive.

■ The immunity from suit for which the defendant contends cannot be recognized. Conceding for the moment that the defendant may claim this immunity in a tort action,— and this is a question on which we find it unnecessary to express an opinion,—nevertheless the immunity does not exist here because it appears to have been expressly waived in the compensation statutes themselves. The act by its own terms applies to "every person in the service of the State, * * * or incorporated public board or commission in this State. * * *" It would do no good to permit the act to apply to the employee of such a board and then to hold that such an employee could not sue the board. If the act applies, and if the employee is given rights

under the act, it necessarily follows that the employee may enforce those rights by resorting to litigation. Thus the act itself waives any immunity if such immunity otherwise existed.

■ Defendant next contends that, even though it be liable to the widow of the deceased and to the child who is under 18 years of age, there is no liability to Thelma, the daughter, who, at the time of the death of her father, had already reached the age of 18. This contention results from the following language which is found in section 8 of Act No. 20 of 1914, as last amended by Act No. 242 of 1928 (page 357), paragraph (F) of subdivision 2, which reads as follows: "When any minor dependent who is not mentally or physically incapable of wage earning, shall become eighteen years of age, payment of the proportion of compensation due such minor shall cease."

It is conceded that, in the absence of incapacity either physical or mental, to earn wages, there can be no recovery on behalf of a minor 18 years of age or over, but it is contended here that the daughter, Thelma, is physically incapacitated.

In support of this contention, the record contains evidence, not controverted, given by Thelma herself, by her mother, and by her physician, which shows conclusively that since reaching the age of puberty she has been a sufferer from "dysmenorrhea," which, her physician explains, is painful, irregular menstruation to such an extent that she is incapacitated from doing any work except a little housework for a few days each month. "Just for a few days, a few hours. About six days." A woman who, for more than 3 weeks of each month, is incapable of working at all, and who can do only a little housework for a few days each month, is physically incapable of wage-earning, and is therefore within the contemplation of paragraph (D) of subdivision 2 of section 8 of the act (as amended by Act No. 242 of 1928, p. 357), which declares that, among those persons conclusively presumed to be dependent, are "a child or children under the age of eighteen years (or over said age, if physically or mentally incapacitated from earning). * * *"

The act provides that a widow and two children are entitled to 65 per cent. of the wages of the deceased for 300 weeks. The deceased was earning $90 per month at the time of his death. This is the equivalent of $20.7692 per week; 65 per cent. of this is $13.4999. The

award of $13.50 per week is correct. We find no fault with the judgment.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.

Affirmed.