EVA R. ASSELIN *vs.* BYRON B. BLOUNT *et al.*

JULY 19, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

294

CONDON, J. This is an appeal from a decree of the superior court denying and dismissing a petition for compensation under the workmen's compensation act on the ground that the deceased workman was engaged in a maritime service upon navigable waters at the time of his death, and that the cause was, therefore, governed by the maritime law, under which the state compensation act could not be applied.

The first contention of the petitioner, appellant here, is that the decree is erroneous, because the deceased's contract

of employment was not essentially maritime in character, but pertained chiefly to local matters having only an incidental relation to navigation, and, therefore, the application of the state workmen's compensation act to this contract would not work material prejudice to the characteristic features of the general maritime law or interfere with the proper harmony and uniformity of that law in its interstate and international relations. Her second contention is that the decree is erroneous because the rights of the petitioner are founded upon a nonmaritime contract voluntarily entered into between the respondents and the deceased workman under an elective workmen's compensation act, which contract became a part of their contract of employment and governed their respective rights and obligations to the exclusion of all other rights and remedies in case of injury to the deceased by reason of an accident arising out of and in the course of his employment.

The respondents challenged both of these grounds and contended that this cause was clearly one of maritime service upon navigable waters, which directly affected navigation and commerce and to which the state compensation act, even though it is elective, could not be applied without doing material prejudice to the characteristic features of the general maritime law.

The facts are undisputed. The deceased, Ernest H. Asselin, husband of the petitioner, drowned on May 14, 1938, in the Assonet river, a branch of the Taunton river, in Somerset, Massachusetts. At the time of his death he was operating a small motorboat which sank about an eighth of a mile from the point where the Assonet river joins the Taunton river. It is admitted by the respondents that he died as the result of an injury received by accident, arising out of and in the course of his employment, and that, if the workmen's compensation act applies, the petitioner is entitled to recover. It is also admitted that respondents, as employ-

ers, had elected to become subject to the act and that Asselin had waived his common-law right of action to recover damages for personal injuries received by accident, arising out of and in the course of his employment.

The respondents are engaged in the business of cultivating and distributing oysters, and maintain a shop in Warren, Rhode Island. They lease oyster beds, plant seed and re-seed oysters, shuck, grade, and pack them at the Warren shop and from there distribute them to various markets. The deceased had worked for these respondents for twelve years and had no fixed duties. He shucked, graded and packed oysters, drove a truck, did general work at the shop in Warren and, at times, usually not more than six weeks, worked on the water dredging oysters or operating a boat carrying oysters to be transplanted in other waters by his employers. The greater part of his work was on land, and, whether it was on land or water, he returned to his home each night. The motorboat which he was operating at the time of his death was about nineteen feet long and was being used to carry a load of oysters, which had been hand dredged from beds in the Assonet river, to a larger boat, about forty-four feet long, that was at anchor in the Taunton river. The oysters were to be taken by this boat for transplanting in Narragansett Bay. In other words, the operation was merely one of a series in the course of the cultivation of oysters.

The Assonet river is about two miles long and is entirely within the limits of the Commonwealth of Massachusetts. The river is narrow and shallow and has never been charted by the government of the United States. The beds where the oysters were dredged belonged to the town of Freetown and were leased by it to the respondents. That town, however, had marked the channel of the river with stakes. The river is not used for commerce but is used by small pleasure craft. Whether it is capable "of use by the public for pur-

poses of transportation and commerce", within the meaning of those words, as used by the United States Supreme Court in *United States* v. *Utah,* 283 U. S. 64, we are unable, from the meagre evidence, to say.

Rivers are navigable in fact if they are susceptible of use in their "ordinary condition, as highways of commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *The Daniel Ball,* 10 Wall. 557, 563. But it is not every creek in which a fishing skiff can float at high water that is navigable. It must be generally and commonly useful to purposes of trade and commerce. *Rowe* v. *Granite Bridge Corp.,* 21 Pick. 344.

In *Leovy* v. *United States,* 177 U. S. 621, 632, it was said: " . . . the term, 'Navigable waters of the United States,' has reference to commerce of a substantial and permanent character to be conducted thereon. . . . When it is remembered that the source of the power of the general government to act at all in this matter arises out of its power to regulate commerce with foreign countries and among the States, it is obvious that what the Constitution and the acts of Congress have in view is the promotion and protection of commerce in its international and interstate aspect, and a practical construction must be put on these enactments as intended for such large and important purposes."

These respondents had the burden, on their plea in abatement, to show that the Assonet river, notwithstanding its nonuse for commerce and the nonaction of the federal government in aid of navigation thereof, was a navigable stream of the United States and, therefore, under the admiralty jurisdiction of its courts. The trial justice found that it was such a navigable river but this finding is not conclusive. However, we shall not disturb his finding, because it does not appear from the petitioner's brief and argument that she has raised the question of nonnavigability on appeal here.

The two points of her brief, hereinbefore stated, presuppose, as we understand them, that the Assonet river is or may be navigable within the meaning of that term, as it has been defined by the United States supreme court; but that nevertheless the service which her deceased husband was performing thereon for his employer at the time of his death, under his contract with them, was not such as to exclude the superior court of this state from entertaining jurisdiction of the appeal, under the workmen's compensation act, of her petition for compensation for the injury which her husband received by accident arising out of and in the course of such employment.

The petitioner does not question the authority of *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, as indeed she cannot in this court; but she contends under her first point that it does not apply to the facts of her case. *Jensen's* case was that of a stevedore who was killed while unloading cargo from a ship in New York harbor. The ship was admittedly engaged in commerce between New York and other states. The court held that the accident occurred on navigable waters, while the deceased was performing a purely maritime service and was, therefore, within the admiralty and maritime jurisdiction of the United States.

Because workmen's compensation laws were unknown to the common law, it held that such laws were not remedies, within the meaning of the saving clause of §371, title 28, U. S. code, 28 U. S. C. A. § 371. The court, giving a reason for its holding, said: "And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

Apparently the court recognized that cases might arise on the navigable waters which, though ordinarily cognizable

only in admiralty, should, because of special circumstances, be treated as not necessarily involving the application of the maritime law. Such was the case of *Grant Smith-Porter v. Rohde,* 257 U. S. 469. There the workman was injured while doing carpentry work on a vessel docked in the Willamette river, a navigable stream in Oregon. He brought a libel in the United States district court against his employer for negligence. Oregon had an elective workmen's compensation law, which the employer had accepted. Applying the doctrine "that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality", the court held that the ship construction contract was nonmaritime and that the workmen's activities had no direct relation to navigation or commerce. Therefore, it held that the state compensation law could work no hardship to the characteristic features of the general maritime law, and the workmen's remedy was under that law and not in admiralty.

In *Miller's Indemnity Underwriters* v. *Braud,* 270 U. S. 59, the court had before it the case of a diver who was drowned in the Sabine river in Texas thirty-five feet from the bank, while sawing timbers of an abandoned set of ways. The employer had accepted the Texas workmen's compensation act, which was elective, and had insured itself in accordance with the provisions of that act. The insurer defended on the ground that the workman's employment was maritime and therefore that the state workmen's compensation law did not apply. The court held that the accident was a maritime tort ordinarily cognizable in admiralty but, since the subject-matter of the work which the workman was doing was of mere local concern, state regulation of it did not materially prejudice the characteristic features of the general maritime law, and the state compensation law governed.

Later, in *Alaska Packers Assn.* v. *Industrial Accident Comm.,* 276 U. S. 467, the court again had occasion to con-

sider the applicability of the *Jensen* case, *supra,* and held that the facts there did not warrant such application. In the case of *Alaska Packers Assn.,* a seaman-fisherman was injured in Alaska, while standing on the shore pushing a boat into the water. This boat had been used by him and another while fishing, in the course of their employment, and they were preparing to float it to the dock to be stored for the winter, the fishing season then being finished. The claimant had signed as a seaman and had sailed as such from California to Alaska, where he had fished, made nets, repaired small boats, and did anything his employer told him to do. The business of the employer was catching and canning salmon. The employer had accepted the California compensation act and the claimant had been awarded compensation thereunder. The employer contended that the claimant had been injured while working under a maritime contract and that therefore his case was not cognizable by the California courts under the state workmen's compensation law. However, the United States supreme court, on the employer's petition for *certiorari,* rejected this contention.

And further, following the reasoning in the *Grant Smith-Porter* case, *supra,* and in the *Alaska Packers Ass'n* case, the court said in *Sultan Ry. Co.* v. *Dept. of Labor, Washington,* 277 U. S. 135, in which it upheld the application of the state of Washington workmen's compensation act, to workmen engaged in log-booming operations on a navigable stream, "that where employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity."

A long line of decisions of the United States supreme court have further marked out the limits of the *Jensen* case

and explained the scope of the exceptions thereto, as set out in *Grant Smith-Porter* v. *Rohde, supra,* and *Miller's Indemnity Underwriters* v. *Braud, supra.* The inferior federal courts and the state courts of last resort have had occasion many times to determine whether or not a given set of circumstances was governed by the *Jensen* case or was a legitimate exception, in accordance with the statement that, where the employment, although maritime in character, pertains more to local matters and has only an incidental relation to commerce and navigation, it may be regulated by local rules. *Sultan Ry. Co.* v. *Dept. of Labor, supra.* It is not necessary to our present purpose to cite these numerous cases or to quote from them. However, there are two such cases that deserve at least a brief mention, because of the close resemblance of their facts to those of the case at bar. They are *Travelers' Ins. Co.* v. *Bacon,* 30 Ga. App. 728, 119 S. E. 458, and *Alaska Packers Ass'n* v. *Marshall,* 95 F. (2d) 279.

In the *Travelers' Ins. Co.* case, the Georgia court held that a workman, who was hired to operate his master's boat on navigable waters and fish for prawn and shrimp and to take care of boats and tackle on land and who was drowned when there was an explosion on the boat, while it was in a creek where he was fishing for prawn, was engaged in the performance of work that was purely local and had no direct relation to navigation or commerce.

*Alaska Packers Ass'n* v. *Marshall, supra,* presented a case where the workman had been hired under a contract as a fisherman. As such, he lived on shore and also, at times, worked on shore in his employer's canneries, mending nets, and in conditioning schooners. As a fisherman he operated a small schooner in common with another workman, reported every twenty-four hours to his employer and delivered his catch of salmon. While he was thus engaged in fishing on Bristol Bay in Alaska, a storm destroyed his schooner

and he was drowned. In holding that the case came within the state compensation law as an exception to the *Jensen* case, on the ground that the workman's employment was local in character, the court said, at page 281 of the opinion: "The employee does not take the fish for sale to the employer, nor has he any 'lay' or share in the catch. . . . The fish is the Company's as soon as securely netted, its raw material on the way to the processing in the nearby plant. . . . It is thus apparent that the fishing incidents of the whole contract for the varied employment are by function and distance local to the plant and a part of the canning enterprise. Here is no commercial vessel sailing on the high seas carrying freight or passengers, or both, from port to port, where, if local law applied, the relationship of seamen to owner would vary, maybe half a dozen times, in the course of the voyage."

Those cases recognized the fact that, even where the tort was maritime, the state workmen's compensation act nevertheless applied, if the workman's employment pertained substantially to local matters and only incidentally to navigation. Whether or not the facts of any individual case warrant placing it within the exception of the *Jensen* case, *supra*, is a nice question to be decided by the state court in the first instance, in the light of the pertinent precedents, subject to ultimate review by the federal supreme court.

Judged by the standards of inclusion and exclusion, as we have discerned them in the cases which we have examined, and some of which we have hereinabove reviewed, we are of the opinion, in the instant cause, that the subject-matter of Asselin's employment was essentially local in character, having only an incidental relation to navigation and none to commerce. His work was not maritime but pertained almost wholly to the land. Even when on the waters of the Assonet river, he was not engaged in commerce but in the cultivation of oysters, which has been held to be the

concern of the state and not of the federal government. *McCready* v. *Virginia*, 94 U. S. 391. Until the oysters became the subject of trade, the court indicated in that case, commerce had nothing to do with them. In other words, mere oyster cultivation is not a subject of commerce, as contemplated under admiralty jurisdiction.

In the instant cause the oysters were seed oysters being removed from the Assonet river for transplanting by Asselin's employers in the waters of Narragansett Bay. Asselin had dredged them from beds belonging to his employers and was in the course of delivering them to his employers in their motorboat when it sank and he was drowned. As stated earlier in this opinion, this was one of a series of operations in the course of cultivation of the oysters. They were not yet moving in the course of trade and commerce. How can the application of the workmen's compensation act to this accident, arising out of and in the course of such employment, work material prejudice to the characteristic features of the general maritime law? In what manner will the harmony and uniformity of the maritime law be interfered with in its interstate and international relations, if the rules and regulations of the local law are applied to the characteristically local and noncommercial service of this workman to his employers? We are of the opinion, after carefully considering the pronouncements of the federal supreme court on the varying cases which have been submitted to it, that we have here a case which does neither of these two things, and, therefore, the workmen's compensation act may and should be applied. For this reason, we sustain the petitioner's first contention.

The petitioner's second point, to the effect that the *Jensen* case, *supra*, does not apply where an elective workmen's compensation act, such as the Rhode Island act is involved, and where the parties to the employment contract have freely elected to come under it, need not be considered by

us, in the view which we have taken of the first point. The United States supreme court has said, in answer to a contention of this kind, and in refusing to apply the state law in *Employers' Liability Assurance Corp., Ltd.* v. *Cook,* 281 U. S. 233: "The fact that the Compensation Law of the State was elective in form does not aid the respondents." The petitioner, however, contends that in a later case—*Carlin Construction Co.* v. *Heaney,* 299 U. S. 41—the supreme court has approved the proposition for which she contends. Whether it has done so we need not say, as our disposition of the petitioner's first point is decisive of this appeal in her favor.

For the reasons herein stated, we are of the opinion that the superior court was in error in holding that it was without jurisdiction to entertain this petition.

Petitioner's appeal is, therefore, sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for the entry of a decree granting the relief prayed for by the petition.

*James B. Linehan,* for petitioner.

*Haslam, Arnold & Sumpter, Harry A. Tuell,* for respondents.