## GONZALEZ v. RIVERSIDE & FORT LEE FERRY CO.

District Court, S. D. New York.

Feb. 24, 1942.

Silas B. Axtell, of New York City (Dominick Blasi, of Brooklyn, N. Y., and Lucien V. Axtell, of New York City, of counsel), for libellant.

Duncan & Mount, of New York City (Frank A. Bull, and John H. Galloway, Jr., both of New York City, of counsel), for respondent.

RIFKIND, District Judge.

The libellant was injured on September 21, 1940, when he was caught on the outside fender of the ferryboat Tenafly as it came in contact with the wooden piles of the slip from which the ferry had just begun to emerge. He brought action under the Jones Act, 46 U.S.C.A. § 688 and for maintenance and cure.

Is that action maintainable? Concededly, it is not maintainable if the libellant is covered by the provisions of the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., or the New Jersey Compensation Act, N.J.S.A. 34:15–1 et seq., Grant Smith-Porter Ship Co. v. Rohde, 1921, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008.

Whether the Longshoremen's Act applies depends upon whether libellant comes within the classification of "master or member of a crew" which is expressly excluded from the benefits of the Act, 33 U.S.C.A. § 903.

The question presented is one of fact. The answer calls for an analysis of the character of libellant's employment.

The respondent operates a number of ferryboats across the Hudson River between Manhattan Island and Edgewater, New Jersey. Among them are the Leonia, the Tenafly and the Tom McCarter. In 1938, libellant was employed as a fireman on board one or more of these ferryboats. Sometime in 1939 the character of his work was changed. Detailed work records from January 1, 1940, to the date of the accident show him predominantly engaged in demolishing a ferry house, making appliances in the workshop, readying ferries by loading coal, removing ashes and clean-

ing boilers, maintaining steam in stand-by ferries, greasing ferry fenders and slip piles and tending the terminal grounds. On February 6 and May 18, 1940, he served as fireman on board one of the ferryboats. On May 30th he worked as oiler on the Edgewater and from July 4 to July 8 he was similarly occupied on several of the respondent's ferries. On Labor Day of 1940 he worked as fireman on the Leonia.

At the conclusion of his work on September 20th, the day preceding the accident, libellant was instructed by the shore superintendent to report for work next day and to grease the fenders on all the ferryboats. On September 21st libellant first put water in the boilers of the Leonia and then he and a co-worker proceeded with their assignment to grease the ferry fenders. First they attended to the Tom McCarter; from the Tom McCarter they went to the Tenafly. They completed one side of the Tenafly and were beginning the second when the accident occurred. Both the Tom McCarter and the Tenafly were in operation that morning. There is dispute as to whether respondent had authorized the performance of this work while the vessels were in motion. There is no dispute, however, that the work was frequently done both while the ferries were in slip and while enroute across the Hudson. The object of libellant's activity in applying grease to fenders was to facilitate the berthing of the ferries by reducing the friction between the ferry fenders and the slip piles.

The libellant was not employed under "articles". This was equally true of the master, mate, fireman and oiler. The libellant slept and ate ashore. The other employees on board the Tenafly did likewise. All the employees including the libellant were paid hourly wages. Libellant had no duties directly connected with the navigation of the ferries except on the several occasions when he was a fireman or oiler, unless fender greasing be so regarded. There is conflict in the evidence as to whether he was under the direction of the ship's officers or the shore superintendent. I regard the evidence in favor of the latter alternative as more credible.

These facts compel the conclusion that the libellant was not a member of the crew of the Tenafly.

■■ Libellant argues that there is no substantial difference between oiling the engines and applying grease to the fenders.

The failure of either function would generate heat and would interfere with the ship's enterprise. The similarity suggested is undoubtedly present. But the issue cannot be resolved by the logic of physics. The facts must be observed in the light of Congressional intention and with historical rather than physical perspective. The Longshoremen's Act was intended to confer upon a certain class of maritime workers the benefits of a system of compensation for injury, regardless of fault. "The statute should be construed liberally to protect laborers". South Chicago Coal & Dock Co. v. Bassett, 7 Cir., 1939, 104 F.2d 522, 526, affirmed 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732.

■ The fact that in this instance libellant believes he might have a larger recovery under the Jones Act does not justify a narrowing of the Longshoremen's Act so as to exclude from its evident advantages members of the class of employees whom Congress intended to benefit. Moore Dry Dock Co. v. Pillsbury, 9 Cir., 1938, 100 F.2d 245.

A comparison of the facts of the instant case with those of South Chicago Coal & Dock Co. v. Bassett tends to sustain the conclusion reached herein. In that case it was clear that the employee took his orders from the captain of the vessel; and among the employee's duties were handling the lines when it was necessary to release the vessel or make it fast, cleaning the boat and the general service of a deckhand. He was listed as a member of the "crew". The Circuit Court of Appeals found not only that there was evidence to sustain the Commissioner's findings that he was not a member of the crew within the meaning of the Longshoremen's Act, which was all that was necessary for its decision, but went further and declared that the evidence convincingly established the employee's non-seaman status.

The fact that libellant had sometime been a member of the crew is immaterial. Antus v. Interocean S. S. Co., 6 Cir., 1939, 108 F.2d 185.

Many cases have been called to my attention which suggest that libellant's services made him a seaman entitling him to sue under the Jones Act. They all antedate the Longshoremen's Act and are, therefore, no longer relevant. Kraft v. A. H. Bull S. S. Co., D.C.S.D.N.Y.1939, 28 F.Supp. 437; Seneca Washed Gravel Corp. v. McManigal, 2 Cir., 1933, 65 F.2d 779; Hawn v.

American S. S. Co., 2 Cir., 1939, 107 F.2d 999. See, also, Parker v. Motor Boat Sales, Inc., December 8, 1941, 62 S.Ct. 221, 86 L.Ed. ——.

Since the libel must be dismissed, it is unnecessary to decide whether the New Jersey Compensation Act applies.