**James C. DAGGER, Libellant,**

v.

**U. S. N. S. SANDS, Registry No. GOR 6, her engines, tackle, apparel and furniture, Marietta Manufacturing Company, a West Virginia corporation, William Potts and Clarence D. Swain, Respondents.**

**No. 2271.**

United States District Court
S. D. West Virginia,
Huntington Division.

Feb. 16, 1968.

W. Dale Greene, Preiser, Greene & Hunt, Charleston, W. Va., for libellant.

Robert H. C. Kay, Kay, Casto & Chaney, Charleston, W. Va., for respondents.

CHRISTIE, District Judge:

Libellant, a business invitee aboard the U. S. N. S. Sands then being constructed by the respondent, Marietta Manufacturing Company, has instituted this action in admiralty against the respondents, alleging injury as the result of negligence on the part of the Marietta Manufacturing Company and its employees, William Potts and Clarence Swain. Respondents have moved to dismiss for lack of jurisdiction of the subject matter under the theory that the action is not cognizable in admiralty.

The libellant, at the time of the injury here complained of, was working as a port engineer for the Military Sea Transportation Service of the United States Navy. On August 10, 1964, libellant was injured while conducting an inspection aboard the U. S. N. S. Sands. On the date of the injury, the Sands had been launched in the waters of the Ohio River, however, construction of the ship had not, as of that time, been completed. Respondents, in their motion to dismiss, rely upon the following facts established by an affidavit submitted in conjunction with the motion: (1) At the time of the injury the U.S.N.S. Sands was a new ship still in the process of construction, and (2) at the time of the injury the Sands was in water which was a part of the yard of Marietta Manufacturing Company at Point Pleasant, West Virginia. In our opinion these facts are not decisive in determining whether or not this Court has jurisdiction in admiralty to adjudicate the claim asserted.

Numerous authorities may be found to the effect that every species of tort, however occurring and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance, providing the substance and consummation of the wrong and injury take place upon these waters. The Plymouth, 3 Wall. 20, 70 U.S. 20, 18 L. Ed. 125 (1866); Gonsalves v. Morse Dry Dock & Repair Co., 266 U.S. 171, 45 S.Ct. 39, 69 L.Ed. 228 (1924); Lamb et al. v. Interstate S. S. Co. et al., 149 F.2d 914 (6th Cir. 1945); Dean v. Chesapeake Bay Ferry District, 158 F.Supp. 408 (E.D.Va.1958); Weinstein et al. v. Eastern Airlines, Inc., et al., 316 F.2d 758 (3rd Cir. 1963). In response to a certified question inquiring whether there was jurisdiction in admiralty merely because an alleged tort occurred on navigable waters, the Supreme Court, in Grant Smith-Porter Ship Company v.

Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922), made the following reply:

"The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled. * * * "

* * * * * *

"Construing the first question as meaning to inquire whether general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on *a vessel in process of construction* when lying on navigable waters within a State, we answer, yes." (Emphasis added).

Thus, when a court is called upon to determine whether or not admiralty jurisdiction exists, a clear distinction must be made between actions in tort and actions in contract. Relying upon the "nature of the transaction" criterion mentioned in Grant Smith-Porter Ship Company v. Rohde, supra, the courts have concluded that contracts relating to the construction of new ships are only remotely connected with commerce and navigation and have held that a cause of action arising out of such a contract is not within the admiralty jurisdiction of the Federal District Courts. General Engine & Machine Works, Inc. v. Slay et al., 222 F. Supp. 745 (S.D.Ala.1963); Dubuque Boat & Boiler Company v. Oil Screw Commander, 251 F.Supp. 923 (W.D.Mo. 1966); Thames Towboat Co. v. Francis McDonald, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920). However, in tort cases the crucial factor utilized in determining whether or not admiralty jurisdiction exists is the locality or place where the tort was committed rather than the nature of the transaction giving rise to the injury. This "locality" criterion utilized

in determining whether admiralty has jurisdiction refers, of course, to navigable waters. If the tort is committed upon "navigable waters" admiralty jurisdiction will ordinarily attach, and the fact that the tort occurred on a ship in the process of construction is of little significance. Atlantic Transport Company of West Virginia v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914); United States v. Matson Navigation Co., et al., 201 F.2d 610 (9th Cir. 1953); Grant Smith-Porter Ship Company v. Rohde, supra. As stated in 2 Am.Jur.2d, Admiralty, Section 77,

"The distinction between construction and repair of vessels which plays an important role in determining admiralty's contract jurisdiction does not govern admiralty's tort jurisdiction, and such jurisdiction may be exercised *where the tort was committed in the course of a vessel's construction.*"

In the initial memorandum submitted to the Court in support of the motion to dismiss, respondents relied upon the fact that at the time of the injury complained of the vessel was under construction, citing a number of cases to the effect that a contract to build a ship is not a maritime contract, and therefore, is outside the jurisdiction of the admiralty court. As we have seen, however, jurisdiction over a cause of action based upon the commission of a tort, as in the present case, is not dependent upon the condition of the vessel on which the tort occurred but upon the occurrence of an event on navigable waters. Recognizing this fact, respondents, in their reply to libellant's memorandum, now allege that the ship upon which the tort occurred was not located in navigable waters, "but in the waters belonging to and being a part of the shipyard of Marietta Manufacturing Company."[1] The gist of this contention

1. While respondent's assertion of private ownership is uncontradicted in the record, it is difficult to perceive how such a claim can be upheld in the face of the almost universal view that ownership of navigable waters is vested in the State for the benefit of the whole people of the

State. Taylor v. Commonwealth, 102 Va. 759, 47 S.E. 875 (1904). With respect to the Ohio River in particular, the West Virginia Supreme Court made the following remarks in Barre v. Flemings, 29 W.Va. 314, 1 S.E. 731, 739 (1887):

was stated by respondents in the following manner:

"Navigable waters means that all persons have the right to use the same and are open to the public. The yard of Marietta Manufacturing Company was not a public domain but the private property of Marietta Manufacturing Company and, thus, no person, without its permission, had the right to enter thereon."

It is a matter of common knowledge that the waters of the Ohio River are "navigable in fact," and, accordingly, this Court now takes judicial notice of that fact.[2] Respondents do not contend that the Ohio River is not a navigable stream nor do they deny that libellant's injury occurred in the waters of the Ohio River, however, it is apparently respondents' contention that the private ownership of the shipyard prevents this particular part of the waters of the Ohio River from being considered navigable. Such a view fails to consider the definition of navigable waters which, as given above, is water that is "navigable in fact." Thus, the status of the waters as navigable or non-navigable does not depend upon its characterization with respect to ownership, but upon a determination of whether it is or is not "navigable in fact." As was pointed out by the Fifth Circuit Court,

"Admiralty jurisdiction is not limited to transportation of goods and passengers in interstate or foreign commerce but depends upon the jurisdiction conferred in Article 3, § 2, extending the judicial power of the United States to all cases of admiralty and maritime jurisdiction. This includes canals and other waters *even if they be privately owned or claimed.*" (Emphasis added). McKie v. Diamond

Marine Co., 204 F.2d 132 (5th Cir. 1953). See also United Geophysical Company v. Vela, 231 F.2d 816 (5th Cir. 1956); The Lucky Lindy, 76 F.2d 561 (5th Cir. 1935); Guilbeau v. Falcon Seaboard Drilling Company, 215 F.Supp. 909 (E.D.La.1963); Silver Springs Paradise Co. v. Ray, 50 F.2d 356 (5th Cir. 1931).

In view of the above, it seems apparent that the injury suffered by the libellant did in fact occur upon "navigable waters" and is, as a consequence, within the cognizance of admiralty jurisdiction. Respondents' motion to dismiss will accordingly be denied.

---

" * * * (T)he riparian owners of lands bounded by the Ohio River own the fee to low-water mark, subject to an easement of the public in that portion lying below high-water mark, with the right of the state to control that easement for the purposes of navigation and commerce * * *."

In any event, under the view we take of this case public or private ownership is not a relevant factor in determining whether waters are "navigable" and, therefore, within the jurisdiction of a court of admiralty.

2. See generally, Ravenswood v. Flemmings, 22 W.Va. 52; Streckfus Steamers, Inc. v. Fox, 14 F.Supp. 312 (S.D.W.Va.1936).